THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LONNIE WATKINS, Defendant-Appellant.

First District (5th Division)   No. 1—88—2428

Opinion filed September 30, 1991.

---

Daniel T. Coyne, of Chicago (Dennis VanDerGinst, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William P. Pistorius, and Gunta Z. Hadac, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Defendant was arrested on August 24, 1986, and charged with possession with intent to deliver. On October 15, 1986, these charges

were nol-prossed by the State, and defendant was subsequently charged by indictment on April 30, 1987. His motion to dismiss based upon violation of speedy trial rights was denied by the trial court. A motion to suppress was denied as well. A jury convicted defendant of possession of a controlled substance and at a July 12, 1988, sentencing hearing he was sentenced to five years' imprisonment to be followed by two years of mandatory supervised release. It is from this judgment that he now appeals.

On August 23, 1986, defendant went to the police station and reported that he had been robbed by Christopher Nelson and threatened with bodily harm by Christopher's brother, Vernon Nelson. Later that day the police arrested Vernon Nelson and brought him to the police station. Since the arresting officers were unable to reach defendant by phone to inform him of Nelson's arrest and the upcoming court date, they went to defendant's home to give him this information. While there is differing testimony as to the events leading up to the police entry into defendant's apartment (defendant testified that when the police knocked on his door, he asked them to go back outside so that he could verify from his window that they were police; at the suppression hearing Officer McMeel testified that he did not recall being asked to go outside and that defendant had invited the officers into his apartment so that he would not have to discuss his business in the hallway; at trial Officer McMeel testified that the officers were asked to step outside and were later invited into the apartment), there is nevertheless agreement that they did smell phencyclidine (PCP) from the doorway, that they did enter the apartment, and that they did see a plastic bag containing what appeared to be marijuana on the kitchen table. The officers also saw and gathered into evidence other narcotics paraphernalia, including a small brown bottle containing liquid which smelled like PCP, an eye dropper, tin foil packets, and cash totalling $363.

Defendant was arrested on charges of possession with intent to deliver. After these were nol-prossed (October 15, 1986), he was indicted on identical charges (April 30, 1987), and a jury trial ensued. At trial defendant testified that he had been drinking during the evening preceding his arrest, and that he was sleeping at the time the police arrived. Three additional witnesses testified that they had been drinking with defendant earlier that evening before the police arrived. They further testified that although drugs and drug dealers were always present in their apartment building, defendant always chased such persons away. In spite of this testimony, the jury found defendant guilty, and he was sentenced to five years in the Illinois Depart-

ment of Corrections. It is from this conviction that defendant now appeals.

On appeal defendant first contends that he was denied his statutory and sixth amendment rights to a speedy trial. (Section 103—5(b) of the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 103—5(b)) implements an individual's constitutional right to a speedy trial and provides that every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date the defendant demands trial, unless the delay is occasioned by the defendant.) In his speedy trial argument, defendant notes that he was arrested on August 24, 1986. When the State's request for a continuance was refused on October 17, 1986 (lab results were not yet available), the case was nol-prossed by the State's Attorney. Subsequently a grand jury voted a true bill against defendant on April 30, 1987, and an indictment was filed on May 6, 1987. A hearing was held at which the trial court denied the motion, finding that although 203 days had gone by, no demand for a trial had been made at the time of the *nolle prosequi*, and thus no rights had been violated.

Defendant argues that even though no demand for trial was made at the time of the *nolle prosequi*, he was not represented by counsel at this time, and therefore the demand requirement should be liberally construed. Furthermore, defendant maintains that he was additionally prejudiced as to his speedy trial rights at the hearing on the motion to dismiss. On this occasion, the defendant's attorney, Mr. Schierer, mistakenly represented to the judge that defendant had been represented by counsel at the time of the *nolle prosequi*. The court's denial of this motion was thus based on the fact that no demand had been made and that the absence of any demand was a tactical decision by counsel. (Although the State argues that defendant did have counsel at the time of the *nolle prosequi*, a review of the record shows that while the public defender was appointed for the bond hearing, defendant appeared *pro se* afterwards and was told by the judge that he could speak to the bar association lawyer if he wished.)

The State argues that even if this issue has been preserved for review (it was not included in a post-trial motion), speedy trial rights were not implicated as no demand was ever made. Assuming, *arguendo*, that a demand had been made, the State further contends that if such a demand was made after the *nolle prosequi*, it would have been meaningless, as case law indicates that a trial demand which is made at a time when no charges are pending has no value. See *People v. Freedman* (1987), 155 Ill. App. 3d 469, 474, 508 N.E.2d 326, 331

(which provides that "[i]n order to invoke the 160-day period, the accused must be out on 'bail or recognizance' and must demand trial. [Citation.] However, such a demand is meaningless when made at a time no charges are pending upon which the accused can be tried").

The State further argues that even if a demand for trial had been made before the *nolle prosequi* (presumably while defendant was still charged and still on bond), in the absence of evidence indicating that the *nolle prosequi* was undertaken to evade the statutory provisions, the *nolle prosequi* would have tolled the running of the statutory 160 days, and defendant would not have been denied his right to a speedy trial. Two recent first district cases support this view. (See *People v. Decatur* (1989), 191 Ill. App. 3d 1034, 548 N.E.2d 509; see also *People v. Austin* (1990), 195 Ill. App. 3d 17, 55 N.E.2d 1074.) In *Decatur* and *Austin*, the reviewing court reversed the trial courts' findings that there had been violations of the defendants' speedy trial rights. Both cases involved defendants who had been arrested on charges of possession. Both cases proceeded to the preliminary hearing stage. In *Decatur*, the defendant demanded trial, while in *Austin*, he did not. In both cases the State nol-prossed the pending charges due to lack of laboratory results. In *Decatur* laboratory analysis of the substance at issue was received within 11 days and defendant was not indicted until eight months later. In *Austin*, the lab analysis was received in 30 days, but defendant was not indicted until 6½ months later. In both cases the trial courts found violations of the defendants' speedy trial rights and dismissed the charges. In both cases the reviewing court reversed, finding that the statutory speedy trial term was tolled in situations where the prosecutor was granted a *nolle prosequi*, defendant was released from custody, bail, or recognizance, and there was no desire to harass, prejudice, or gain a tactical advantage over defendant by the State.

■ In view of the factual similarities between *Decatur, Austin*, and the case at bar, we find that there has been no violation of defendant's right to a speedy trial. Even if defendant had been represented by competent counsel who had appropriately filed a demand for trial before the *nolle prosequi*, the State's right to refile after a long delay as well as the tolling effect of the *nolle prosequi* has been firmly established by existing case law.

■ Defendant also contends that Mr. Schierer's misstatement regarding his representation at the time of the *nolle prosequi* constituted ineffective assistance of counsel. Our supreme court has stated that effective assistance of counsel refers to competent, not perfect, representation and that, in the absence of a showing that the outcome

of a new trial likely would be different, the Constitution does not require a new trial for every defendant whose counsel errs at trial. (*People v. Stewart* (1984), 104 Ill. 2d 463, 491, 473 N.E.2d 1227, 1240.) Since the analysis of the *nolle prosequi* and its tolling effect demonstrates that even a timely demand for trial by competent counsel would have had no bearing on the motion to dismiss, surely Mr. Schierer's misstatement as to defendant's representation could not have affected the outcome of the case.

■ Defendant further maintains that he was denied effective assistance of counsel during the time he was represented by Mr. Schierer (December 9, 1987, to March 14, 1988), as unbeknownst to defendant, on February 19, 1988, Mr. Schierer signed an affidavit and motion to have his name stricken from the roll of attorneys licensed to practice law in Illinois, and was actually removed from the roll of attorneys on March 28, 1988. While there is case law which supports the proposition that a defendant who is represented by an attorney not licensed to practice law has been denied assistance of counsel (see *Solina v. United States* (2d Cir. 1983), 709 F.2d 160), such authority does not support defendant's claim. Mr. Schierer was licensed to practice law in Illinois during the time he represented defendant. In fact, Mr. Schierer's name was removed from the roll of licensed attorneys on March 28, 1988, 14 days after defendant fired him. Moreover, apart from Mr. Schierer's misstatement regarding the *nolle prosequi,* defendant fails to point to any particular area where Mr. Schierer failed to adequately represent him. Mr. Schierer participated in argument during the hearing on the motion to dismiss. At the hearing on the motion to suppress, Mr. Schierer presented sufficient evidence to survive the prosecutor's motion for a directed finding, participated in active cross-examination of the prosecution witnesses, and argued both opening and closing statements. In reviewing counsel's representation of defendant, we conclude that counsel's performance fell well within the range of "competence demanded of attorneys in criminal cases." *People v. Mitchell* (1984), 105 Ill. 2d 1, 15, 473 N. E. 2d 1270, 1275.

Defendant further maintains that he was denied a fair trial due to inappropriate and prejudicial prosecutorial remarks designed to inflame the jury. The State, on the other hand, contends that the prosecutor's comments were proper as comments upon the evidence or the inferences drawn therefrom or were invited responses to defense counsel's argument. See *People v. Faysom* (1985), 131 Ill. App. 3d 517, 523, 475 N.E.2d 945, 950; see also *People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291, 297.

■ Most of the complained-of comments occurred during the rebuttal argument of the State's Attorney. Although all of the offensive remarks were neither objected to at trial nor raised in a post-trial motion, we will assume that they have been preserved for purposes of appeal. Defendant first alleges that the prosecutor implied that defense counsel was trying to confuse the jury about what the case was really about, a practice condemned by Illinois case law. (*People v. Jackson* (1983), 119 Ill. App. 3d 951, 458 N.E.2d 59, 63-64.) The improper comments complained of by the defendant occur within the following passage:

> "Let's get something straight here before you go back and deliberate. Vernon Nelson is not on trial. Neither is Christopher Nelson. They have had their days in court. And you are not sitting on their jury. The police officers are certainly not on trial. Don't let anyone misdirect your attention from what this case is about. This case is about this man possessing drugs. And what is he charged with? Is he charged with selling drugs? No. He is not charged with selling drugs. There is no evidence that he sold drugs. Even though there is no evidence of that, and he was never charged with that. Is he charged with using drugs? No. He is not. He is not charged with using drugs."

The State contends that the prosecutor's references to Vernon Nelson, Christopher Nelson, and the police are proper because they redirect the jury's attention to the issues in the case before them. Defense counsel did bring up the fact that his client was robbed and threatened by the Nelson brothers, and also implied that the police were somehow implicated in a conspiracy to frame the defendant. ("Use your common sense deciding whether these things were there before the officers got there.") The argument is persuasive. We therefore find that these prosecutorial remarks fall into the category of invited responses to defense counsel's arguments, rather than inappropriate inflammatory remarks.

■ Defendant also contends that the prosecutor's comments as to what charges were not placed against him were also improper and created the suggestion that the defendant had already been given a break. While the reviewing court condemned such a practice in *People v. Estes* (1984), 127 Ill. App. 3d 642, 469 N.E.2d 275, the circumstances of that case differ from the instant action. In *Estes*, the court held that the prosecutor's comment was improper and prejudicial because its only purpose was to minimize the significance of finding the defendant guilty of the crime charged. In the case at hand, defense counsel had elicited testimony from every witness that defendant did

not use or sell drugs. Thus, the prosecutor's comments merely clarified what the defendant was charged with and were invited responses to previous trial testimony. Unlike the remarks in *Estes*, these remarks bore a reasonable relationship to the evidence adduced at trial and thus were not patently inappropriate.

■ Defendant also claims that the prosecutor's comments enhanced the testimony of the police officers both by stressing the indignities the police had to suffer by being called liars by Watkins, and also by referring to the officers' status as policemen, arguing that they had no motive to lie. While it is correct that a police officer's testimony should not be given greater weight than that of any other witness, the State's Attorney's comments in the case at bar were not inappropriate. In his opening remarks and throughout his case in chief, defense counsel suggested that because Watkins was drunk the night of the arrest, he could not have known the drugs were in the apartment, and that somehow the police officers had put them there. ("We don't know how these drugs got into Lonnie's apartment. We don't know who brought them there \*\*\*.") The prosecutor's comments were thus a reasonable response to defense counsel's remarks, rather than an improper bolstering of the officers' testimony.

■ Defendant also alleges that the prosecutor improperly commented that defendant lied. "If there is one thing that infuriates me about this case, it is that he lied." While this remark may be inappropriate out of context, case law supports the proposition that a prosecutor may comment that the defendant or a defense witness is a "liar" if conflicts in evidence make such an assertion a fair inference. (*People v. Starks* (1983), 116 Ill. App. 3d 384, 394, 451 N.E.2d 1298, 1035.) In the case at bar, defendant testified that on the night he was arrested he was not drunk, and also that he was intoxicated, and further that he could not say whether or not he was intoxicated. Based on these inconsistencies, the prosecutor's comment as to defendant's veracity was indeed proper.

Defendant also contends that the prosecutor's remarks about his drinking habits were improper. Specifically, the defendant refers to the prosecutor's alluding to him as "a loveable old alcoholic" and an "old drunk." Although at first glance these remarks may seem inappropriate, when considered in the context of the trial, their character changes. There was testimony, both direct and on cross-examination, regarding defendant's drinking habits and his tendency to be drunk. In fact, one theory of defense was that defendant was so intoxicated on the night of the arrest that he was an easy target for a police set-up. In light of the totality of testimony regarding defendant's drink-

ing, the prosecutor's remarks should most likely be viewed as a reasonable comment on the evidence or as a reasonable inference therefrom. See *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.

Defendant further maintains that the prosecutor unfairly influenced the jury by commenting on a Justice Department survey linking drugs and serious crime. While the prosecutor's single isolated comment was in error, an objection was sustained by the trial court. Additionally, the trial judge cautioned the jurors that the closing arguments were not evidence, but were statements of what the attorneys believed the evidence showed. Based on this instruction and the fact that the objection was sustained, and further, that the offending remarks were not repeated, it is unlikely that the jury was unfairly influenced.

■■ Defendant also argues that the State's Attorney attempted to shift the burden of proof to the defendant by commenting that defendant never called any witnesses to testify as to a police conspiracy against him. While such a comment would be improper in most circumstances (see *People v. Lasley* (1987), 158 Ill. App. 3d 614, 511 N.E.2d 661), in the present action it was an invited response to defense counsel's insinuations that defendant had somehow been set up by the police.

Defendant also insists that the State's Attorney improperly attempted to instruct the jury as to the law when he stated that being drunk was not a defense to possession of a controlled substance. Even though the State's Attorney was responding to the defense argument that defendant was so drunk that he let the police in, the trial court nevertheless sustained defendant's objection and cautioned the jury "to follow the law as the court gives it to you." In view of these circumstances, we find that defendant was not unfairly prejudiced.

Lastly, defendant urges that the prosecutor improperly attempted to instill fear in the jury by arguing as follows:

> "Ladies and gentlemen, how can we ever face our children, how can we ever tell them to say no to drugs, if we let somebody like Lonnie Watkins back out on the street?"

In *People v. Ford* (1983), 113 Ill. App. 3d 659, 662, 447 N.E.2d 564, the reviewing court found similar remarks (" 'I would suggest that the Defense look to the poor, innocent, susceptible children in our community who are tempted and forced by peer pressures' ") to be reversible error. While we do not condone such comments, we do note that the effect of the remarks in the instant action is distinguishable from those in *Ford*. In *Ford* the effect of the offensive remarks was cumulative, having some degree of bearing on the verdict, while in

the instant action the remark was isolated, and balanced against the enormity of the evidence against the defendant, it is unlikely that it constituted a material factor leading to defendant's conviction.

■■ Defendant also contends that the trial court erred in sustaining the State's motion *in limine* to exclude from evidence conversations defendant may have had with police officers subsequent to his arrest. Defendant intended to have Detective Thomas testify concerning an interview he had with defendant the day after his arrest concerning defendants' complaint against Christopher Nelson. By introducing this conversation into evidence, defendant hoped to show that the police had not arrested Christopher Nelson (the subject of defendant's burglary complaint) because he was a police informant. Defendant further hoped to imply that Nelson's status as an informant motivated the alleged police setup of drugs in his apartment. Defendant also argues that by sustaining the State's motion, the trial judge denied him due process by not allowing him to present his theory of defense.

Motions *in limine* are addressed to the trial court's inherent power to admit or exclude evidence (*People v. Escobar* (1988), 168 Ill. App. 3d 30, 43, 522 N.E.2d 191, 199) and are encouraged in criminal cases to exclude collateral or extraneous matters. (*People v. Downey* (1987), 162 Ill. App. 3d 322, 334, 515 N.E.2d 362, 369.) In the case at bar, the trial judge heard the evidence and arguments connected with the conversations defendant wished to introduce indicating that the police had orders not to arrest Christopher Nelson. After consideration, the judge determined that defense counsel could only go into this matter if he could obtain further information linking Nelson's status as an informer to the possession charges in the case at bar. In the absence of a witness who could provide the link between defense counsel's conspiracy theory and the instant action, the trial judge sustained the motion *in limine*, but offered to reconsider his ruling if such a witness could be found. Due to the tenuous nature of defense counsel's evidence, this determination was certainly well within the discretion of the trial judge and will not be overturned by this court.

Defendant also argues that he should have been allowed to introduce the evidence of subsequent conversations in order to show the "complete picture" of his case. In support of this argument, defendant cites the appellate court decision in *People v. Mitchell* (1984), 129 Ill. App. 3d 189, 472 N.E.2d 114. In *Mitchell,* evidence of drug-related conversations subsequent to defendant's arrest was permissible as part of the full circumstances attending the commission of the crime. Although defendant argues the applicability of the *Mitchell* determina-

tion to the case at bar, his reasoning is flawed. In *Mitchell*, there was no motion *in limine*, and defendant's subsequent conversations involved the same offense for which he had been charged. In the instant action, the subsequent conversations involved a third party who could not be linked with the offense that was charged.

Defendant also contends that the evidence presented at the hearing on the motion to suppress was sufficient to show that the seizure of narcotics was unlawful and that the trial court erred when it denied the motion. A reviewing court will not overturn a trial judge's decision on a motion to suppress evidence unless it is determined to be manifestly erroneous. *People v. Jones* (1989), 190 Ill. App. 3d 416, 420, 545 N.E.2d 1332, 1334.

When the trial judge denied defendant's motion to suppress, he stated that he believed the police officer and not the defendant where the testimony was inconsistent. The judge also made the following findings of fact: that defendant made a complaint to the Chicago police officers regarding the Nelson brothers; that the police officers in the normal course of business came to defendant's apartment to inform him of the court date regarding the Nelson brothers; that defendant, who was intoxicated at the time, invited the police officers into his apartment because he did not want to discuss his personal business in the hall; and that the police officers entered the apartment, smelled PCP and saw marijuana, which gave them probable cause to arrest defendant. The record supports this determination.

Defendant argues that this court should overturn the trial court's findings on the motion to suppress based on internal inconsistencies in Officer McMeel's testimony, inconsistencies between Officer McMeel's and Officer O'Donovan's testimony, and the incredibility of defendant's inviting the officers into his apartment when there were narcotics paraphernalia on the kitchen table. Defendant correctly notes that in its review of the decision on the motion to suppress, the reviewing court may consider not only the findings of fact drawn from the hearing on the motion, but also the testimony elicited at trial. (*People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513.) In his argument, defendant calls the court's attention to conflicts between Officer McMeel's testimony at the hearing and his testimony at trial. At the hearing on the motion to suppress, Officer McMeel testified that he did not recall being asked to step outside defendant's apartment to identify himself. At trial he testified that defendant had asked the officers to go outside and was impeached with the prior inconsistency. Also, at the hearing on the motion to suppress, Officer McMeel testified that he spoke with defendant on August 23 (the day the com-

plaint against the Nelsons was made), and at trial, he stated that Officer Daukus spoke with defendant and that he was on the outer reaches of the conversation. Defendant also notes that Officer McMeel testified that he could see what was on defendant's kitchen table when he entered the apartment, while Officer O'Donovan testified that he could not see what was on the kitchen table until entering the kitchen. Although a review of the record indicates that these discrepancies in testimony do in fact exist, they are not significant enough to warrant a reversal of the trial judge's determination. The trial judge was in the best position to observe the demeanor of the witnesses and to determine if they were telling the truth. Also, it was within his discretion to believe the testimony of the police officers. The fact that Officer McMeel later recalled being asked to step outside and the variation between his and Officer O'Donovan's testimony regarding whether the drugs could be seen from the doorway or the kitchen are not sufficient enough to warrant reversal of the denial of the motion to suppress. Furthermore, even though defense counsel maintains that the police version of defendant's behavior is too incredible to be believed, it is not improbable that because defendant was intoxicated, he invited the officers into his apartment, unmindful of the narcotics on the table. Again, the trial judge heard the testimony of the witnesses and was in the best position to judge their credibility. His determination to deny the motion to suppress is supported by the record and will not be overturned.

■■■ Defendant finally contends that the evidence presented at trial was insufficient to show beyond a reasonable doubt that he possessed the controlled substances. When a defendant challenges the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453, 472.) A reviewing court will reverse a guilty verdict only if the evidence is so improbable, impossible, or unsatisfactory as to raise a reasonable doubt as to the guilt of the defendant. *People v. Williams* (1985), 131 Ill. App. 3d 597, 604, 475 N.E.2d 1082, 1087.

The evidence in the case at bar supports a finding of guilty. Two police officers observed narcotics and narcotics paraphernalia on the kitchen table. Both had smelled PCP when they entered the apartment. Marijuana was also recovered from the apartment. The substances removed from defendant's apartment were identified by a chemist as controlled substances.

Defendant's contention that this evidence is insufficient to support a finding of guilty rests largely on his theories of inconsistent police testimony and what he maintains is Watkins' allegedly unbelieveable behavior in admitting the police to his apartment when drugs were in plain view. In his argument, defendant also maintains that the prosecutor unfairly portrayed him as a slick, womanizing, high rolling, drug kingpin. As previously mentioned, the judge or jury is in the best position to observe the demeanor of the witnesses, assess their credibility, and resolve any factual discrepancies. There is nothing in the record which shows that the jury's determination is unsatisfactory.

Accordingly, defendant's conviction is affirmed.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.