**People of the State of Illinois, Plaintiff-Appellee,
v. Arnold Perez, Defendant-Appellant.**

**Gen. No. 52,338.**

First District, Second Division.

February 27, 1968.

Howard L. Kastel, of Chicago, for plaintiff in error.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Oliver D. Ferguson, and Michael Zissman, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE McNAMARA delivered the opinion of the court.

At a jury trial, Arnold Perez was found guilty of the unlawful sale of a narcotic drug and was sentenced to a term of 10 to 12 years in the Illinois State Penitentiary. He appealed directly to the Supreme Court and that court transferred the appeal to this court.

Defendant raises a number of points on appeal. However, we deem it necessary to consider only two of those points. Defendant contends that the trial court erred in sustaining State's objection to defendant's request that the State witness exhibit his arm to the jury, and in admitting testimony obtained through the use of an eavesdropping device.

For the State, Salvatore Monte testified that, on February 15, 1962, he received two phone calls from the defendant whom he knew as Ray. Defendant said that he had some dope he wanted to sell for $25. He instructed Monte to call him at Harry's Grill at 7:00 p. m. if he wanted to buy the drugs. Monte contacted the Narcotics Section of the Chicago Police Department, and from police headquarters, called the defendant, and had the following conversation:

> "He said, 'This is Ray speaking.' I says, 'Is everything all right?' He says, 'Yes. I have the stuff. Bring $25.' He says, 'I'll be there about a quarter to 7:00 or five to 7:00, somewhere around there.'"

After being searched and getting prerecorded and fluorescent-coated money from the police, Monte met the defendant at the restaurant. They then went to defendant's room in a transient hotel located at 909 West Madison Street in Chicago. After Monte gave him the money, defendant left the room for about 20 minutes. He returned and gave Monte two tinfoil packages. As the two men left the hotel, police arrested the defendant upon a prearranged signal given by Monte. It was stipulated that Monte had a previous felony record for passing counterfeit bills.

Officer Dura testified that he listened to the telephone conversation between Monte and the defendant. He related that the conversation was as follows:

> "The party on the other end, supposedly to be Ray said, 'Have you got the money, the $25? Everything is all right.' And Monte says, 'Yes.' He says 'All right, what time will you be here' . . . Said 7:00 o'clock. He says, 'all right.' Ray, the other party, said, 'All right, at Harry's Grill at Madison and Morgan.' "

Officer Dura also testified that he searched Monte and gave him the prerecorded money. He saw Monte and the defendant meet at the Grill and then go to the hotel. He observed the defendant leave the hotel and return in about 20 minutes to a half hour. He arrested defendant when he was leaving the hotel with Monte. He found a $10 bill of the prerecorded money in defendant's possession at that time, and was given the two tinfoil packages by Monte. It was stipulated that these two packages contained heroin.

Officer Lopez testified as to the search of Monte, the recording of the money, and as to the observation of Monte and defendant from the Grill to the hotel culminating in the arrest of defendant.

For the defense, John Ramirez, an inmate of the State Farm at Vandalia, Illinois, testified that on the evening in question, defendant and Monte came to his room at the hotel. Defendant was sick and wanted a shot. Monte mixed some drugs, but the hypodermic needle would not work. Defendant left to get a new needle, and was gone for about 10 or 15 minutes. When defendant returned to the room, Ramirez saw defendant and Monte both take shots of heroin. Ramirez also saw Monte give defendant $10 to rent a room. Ramirez had a previous felony record for armed robbery.

369

Defendant testified in his own behalf that he never called Monte on the telephone, nor had he ever received a call from Monte. He denied selling drugs to Monte. On the evening in question, he met Monte in the Grill. Monte told him that he had narcotics and a complete "outfit." They went to Ramirez's room where Monte took out the heroin. Defendant left the hotel to get a new needle. When he returned they both took shots of heroin. Monte then gave him $10 to pay the rent on a room. They left the hotel together and defendant was arrested. Perez stated that both he and Monte were under the influence of narcotics at the time of the arrest.

In rebuttal, Officer Lopez testified that in his opinion neither Monte nor the defendant was under the influence of narcotics at the time of arrest.

In surrebuttal, it was stipulated that two doctors who examined the defendant in the County Jail would testify that defendant was suffering from narcotics withdrawal pains on February 16th and 19th.

Monte testified that he had formerly been a narcotics addict but that he "was kicking the habit" and that he had not taken any narcotics for about two months prior to the offense. He also stated that he had not taken any narcotics from the time of the offense until trial, a total of about five months. On cross-examination, counsel asked him to roll up his sleeve and exhibit his arm. The prosecutor objected and the court sustained the objection. Defendant contends that the trial court erred in sustaining the State's objections to his request.

People v. Lewis, 25 Ill2d 396, 185 NE2d 168 (1962), is precisely in point. There, the main witness for the State in a prosecution for a "controlled" sale of narcotics testified that he had formerly been a narcotics addict but at the time of trial he had not been a user for about seven months. On cross-examination the witness was asked to exhibit his arm. Objection was made and sus-

tained. The Supreme Court reversed, stating at page 399:

> "The question of whether a witness is a narcotics addict is an important consideration in passing upon the credibility of a witness. For, as we have stated, the testimony of a narcotics addict is subject to suspicion due to the fact that habitual users of narcotics become notorious liars.
>
> "The presence of any scars evidencing a recent use of narcotics would not only affect the credibility of the witness in so far as the recent use of narcotics was concerned, but also might reasonably cast serious doubt upon the truth of the balance of his testimony."

■ ■ For the reasons set forth by the Supreme Court above, defendant in the instant case was entitled to cross-examine the witness about his current use of narcotics, and to do that by any legitimate method. If the witness' arm had been exhibited and scars indicating recent use of narcotics had been shown, that fact would have been of vital importance to the defendant.

■ While acknowledging the Lewis case, the State argues that "there was such direct conflict in the instant case that any evidence that Monte was lying about having overcome his habit could scarcely have cast any more doubt on his truthfulness than the contradicting stories offered by the defendant and the witness Ramirez." They further argue that "under the circumstances, it was the corroborating testimony of the arresting officers which was persuasive and upon which the jury had to rely." We do not agree. Monte's credibility was a critical factor in the determination of this case. As to whether defendant transacted a sale of a narcotics drug, there is insufficient evidence in the record independent of Monte's testimony to establish guilt beyond a reasonable doubt. Since Monte's testimony was so decisive, it was revers-

371

ible error to improperly limit his cross-examination by refusing to compel him to exhibit his arm.

Defendant also contends that the trial court erred in admitting testimony of a police officer concerning a conversation obtained by the officer through the use of an eavesdropping device.

Officer Dura testified as to a telephone conversation between Monte and the defendant. He stated that he listened to that phone conversation "with an apparatus we have for that purpose." He described the apparatus as follows:

> "It is an apparatus you put on the earphone of a telephone, it has a little extension that anyone else can hear. Like he was on the other end and Sal Monte was right next to me."

Article 14 of the Criminal Code of 1961, section 14–1 provides as follows:

> "An eavesdropping device is any device capable of being used to hear or record oral conversation whether such conversation is conducted in person, by telephone, or by any other means.
> "An eavesdropper is any person, including law enforcement officers, who operates or participates in the operation of any eavesdropping device contrary to the provisions of this Article . . ."

Section 14–2 provides as follows:

> "A person commits eavesdropping when he:

> "(a) Uses an eavesdropping device to hear or record all or any part of any oral conversation without the consent of any party thereto . . ."

Section 14–5 provides that any evidence obtained in violation of the article is not admissible in any civil or criminal trial.

■ In People v. Kurth, 34 Ill2d 387, 216 NE2d 154 (1966), our Supreme Court barred the admission into evidence of the transmission or recording of a conversation against any party who has not consented to the recording or transmission of his conversation. It is clear that the defendant did not consent to the transmission of his conversation with Monte. It is also clear that the apparatus used here, as described by Officer Dura, is such that it comes under the proscription of the statute.

The admission of the testimony of the police officer concerning the telephone conversation was error. However, it must be remembered that at the time of the trial the trial judge did not have the benefit of the decision in People v. Kurth, supra.

Since we are remanding the cause for a new trial, in view of the facts and circumstances of this case, we direct the trial court in the retrial to instruct the jury in the language of the indictment. None of the other assignments of error are likely to recur in a retrial.

The judgment of the Circuit Court is reversed and the cause remanded for a new trial.

Judgment reversed and cause remanded for a new trial.

BURKE, P. J. and LYONS, J., concur.