THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THURMOND LURRY, Defendant-Appellant.

Third District   No. 78-126

Opinion filed October 16, 1979.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant Thurmond Lurry, following trial by jury in the Circuit Court of Will County, was found guilty of the offenses of attempt murder and armed violence. Judgment of conviction was imposed only on the offense of attempt murder and upon this conviction the defendant was sentenced to a term of not less than five years nor more than 20 years in the penitentiary. From this conviction and the sentence imposed thereon the defendant appeals.

A detailed recitation of the evidence adduced at trial is not necessary to determine the issues presented in this appeal. A summarization of such evidence is that there was testimony that the defendant, in the company of Gary Wright, entered an establishment known as Harry's Wine and Liquors at approximately 12:25 a.m. on June 10, 1977. In the establishment the defendant and Wright encountered Joseph Smith, who was playing cards. The defendant asked Smith if he wanted to smoke a couple of "joints." Smith accepted the invitation and left the tavern with the defendant and Wright. The trio entered the defendant's automobile which was driven around until they were in a rural area. At approximately 12:45 a.m. the defendant told Wright to pull over or stop the car so that he could "take a leak." Both the defendant and Smith left the car in order to relieve themselves. Smith testified that as he was about to re-enter the car the defendant fired five or six shots at him, and further testimony established that two bullets hit him. A resident of a nearby farmhouse established the time of the shooting to be at about 12:45 a.m. and that he discovered Smith lying in a fence.

The defendant testified in his own behalf and presented an alibi defense to the effect that at the time established for the shooting he was watching a "big fire" which was in progress about four blocks from Harry's Wine and Liquors store. An employee of the Joliet Fire Department testified that there was in fact a fire five or six blocks from the tavern on the night in question, but not between the time of 12:02 a.m. and 12:50 a.m. on June 10, 1977.

We deem it pertinent to this appeal that the victim Smith admitted that during the year 1974 he had been addicted to heroin and that at the time of the trial he had scars on his forearm from sources other than the wounds he received as a result of the shooting.

The defendant raises a number of issues in this appeal, among which is his contention that the trial court committed reversible error in limiting defense counsel's cross-examination of the State's principal witness by refusing to compel the witness to exhibit his forearm in order to demonstrate, contrary to his testimony, recent drug addiction.

In examining this contention it cannot be denied that Joseph Smith, the victim, was the State's principal witness. He was the only person in a position to identify his assailant or assailants. It was his testimony that identified the defendant as the individual who fired a number of shots at him, two of which struck him in the back.

During defense counsel's cross-examination of the victim Smith the following colloquy ensued:

"MR. BLOCK: Mr. Smith, have you ever used or possessed heroin?

THE WITNESS: Yes.

Q. How much heroin—when did you have this habit of heroin, Mr. Smith?

A. 1974.

Q. Just of one year?

A. Yes.

Q. And how much did you take?

MR. RONKOWSKI: Objection.

THE COURT: Sustained as to 1974.

MR. BLOCK: Okay, Mr. Smith, have you used any contraband substances since 1974.

THE WITNESS: No.

Q. Well, Mr. Smith, you did testify, did you not, that you smoked some joints?

A. Yes.

Q. What do you mean by joint?

A. That is marijuana.

Q. Well, that is a contraband substance, isn't it?

A. Yes.

Q. So you did use some contraband substances since 1974, didn't you?

A. Yes.

Q. Now how many joints did you smoke on June 10, 1974?

A. Four or five.

THE COURT: Is that '74, Mr. Block, I don't mean to interrupt.

MR. BLOCK: June 10, 1977.

THE WITNESS: Four or five.

Q. Okay. Now, Mr. Smith, you have scars on your arm from—

MR. RONKOWSKI: Objection.

MR. BLOCK: Can I finish my question?

THE COURT: He hasn't asked the question. Overruled until the question is asked.

MR. BLOCK: Thank you. You do have scars on your arm from drug use?

MR. RONKOWSKI: Objection.

THE WITNESS: No.

THE COURT: It's been answered.

MR. BLOCK: Do you have scars on either of your forearms?

THE WITNESS: Yes.

Q. Would you roll up your sleeves please?

MR. RONKOWSKI: I will object to this court room demonstration.

THE COURT: Will you approach the bench? (Whereupon, the counsel approached the bench, and a conference was held between court and counsel outside the hearing of the court reporter and the jury.)

THE COURT: The objection will be sustained to the question in that form.

MR. BLOCK: Mr. Smith, do you have any scars on your forearm from sources other than the wounds that you have testified in this case?

THE WITNESS: Yes.

MR. BLOCK: Will you roll up your sleeves please?

MR. RONKOWSKI: Same objection, Your Honor, it's irrelevant.

THE COURT: I think, it is, I'm going to sustain the objection.

MR. BLOCK: Very well.

MR. RONKOWSKI: Thank you.

MR. BLOCK: Mr. Smith, can you describe the scars on your upper left forearm here?

THE WITNESS: Yes.

MR. RONKOWSKI: I will object.

THE COURT: Sustained, he has answered the question, but the jury is instructed to disregard the answer.

MR. BLOCK: Now, Mr. Smith, have you ever defrauded anyone?

MR. RONKOWSKI: Objection.

THE COURT: Sustained.

MR. BLOCK: Mr. Smith, in your lifetime, have you ever lied?
THE WITNESS: Yes.
Q. Would you say more than once?
A. Yes."

■■ The narrow question presented in the issue raised by the defendant is whether the trial court committed reversible error by refusing to direct the witness Smith to roll up his sleeves so the jury could see needle marks or scars evidencing the recent use of narcotics. This question should be answered in the affirmative, since the question as to whether a witness is a narcotics addict is an important consideration in passing upon the credibility of a witness. (*People v. Lewis* (1962), 25 Ill. 2d 396, 185 N.E.2d 168.) Our supreme court in *Lewis* made the observation that habitual users of narcotics become notorious liars. See also *People v. Boyd* (1959), 17 Ill. 2d 321, 161 N.E.2d 311.

The *Lewis* case was cited in *People v. Perez* (1968), 92 Ill. App. 2d 366, 235 N.E.2d 335, where the defendant had been charged with the unlawful sale of narcotics and the reviewing court held that the defendant was entitled to cross-examine the State's principal witness concerning current use of narcotics and was further entitled to have the witness roll up his sleeve and exhibit his arm since on direct examination he had testified that he had formerly been a narcotics addict but had not taken narcotics for about two months before the offense and about five months prior to trial. (See also *People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201, where it was held to be reversible error for the trial court to deny defense counsel's request to examine the arm of the State's principal witness who had been addicted to heroin but had not used narcotics for a period of 10 years prior to his testimony.) The reviewing court in *Strother* further found that the trial court's alternative of calling a physician to examine the witness's arm did not render its refusal of the defendant's request harmless. Our supreme court in *Strother* stated, "The inferences to be drawn from the existence of scars evidencing recent use of narcotics was a question for the jury to determine." 53 Ill. 2d 95, 99, 290 N.E.2d 201, 204.

The State argues that the cases of *Strother*, *Lewis*, and *Perez* are distinguishable from the instant case in that in the cited cases the witnesses were police informants testifying in drug cases and that none of them testified that they had recently been hospitalized. We fail to find any logical reasoning that the rule should be different in an attempt murder case than it is in a drug case. The type of case is not determinative, since the question is whether the witness is an addict and hence his credibility is suspect. We also disagree with the State's argument that it is relevant whether the witness is a police informer before the examination rule is triggered, since again the pivotal question is whether the witness is an

addict and not the nomenclature attached to a witness who testifies. (*People v. McKibben* (1974), 24 Ill. App. 3d 692, 321 N.E.2d 362.) It is true that in the instant case the witness Smith had been hospitalized less than four months prior to trial and on cross-examination acknowledged that he had scars on his arm but that they were not the result of drug usage. Defense counsel attempted to make further inquiry as to the source of the scars but was prevented from doing so by rulings of the trial court. That the witness had been shot and hospitalized approximately four months prior to trial should not serve as a bar which would permit him to exhibit his forearm. It cannot be assumed that jurors are totally unsophisticated. It is reasonable to assume that jurors could detect needle marks if present and then determine whether they were fresh and recently inflicted or whether they were some four months old or older. Our supreme court in the case of *Strother* has specifically held that it is not necessary that an expert such as a physician make the determination as to whether or not needle marks on a witness' arm were of recent origin, but instead that determination falls within the province of the jury. (*People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201.) In the instant case the credibility of the witness Smith was a crucial factor, and the trial court's rejection of defense counsel's request to examine the witness' arm constituted an abuse of discretion and prejudicial error.

As previously stated, the defendant raises a number of issues, and even though it has been determined that there must be a reversal and remand of this case for a new trial, attention should be directed to the issue relating to the prosecutor's closing argument and specifically that portion of the argument which the defendant contends presented an unreasonable appeal to the jury's community interests, fears and sympathies.

The defendant's brief set forth 2½ pages of verbatim in-context transcript of a portion of the prosecutor's final argument. No useful purpose would be served by setting forth in this opinion this portion of the argument in its entirety; however, the remarks of the prosecutor can be characterized as an appeal to the jury based upon racial overtones and racial problems. The prosecutor talked of black crimes in general (both the accused and the victim in the instant case are black) and how crimes committed against blacks by blacks are a serious problem in our society. The prosecutor next designated Detroit as the murder capital of the United States where a young black male had the best chance of not dying by accident, nor for medical reasons, but by being a victim of homicide. The prosecutor then argued that the defendant and his accomplice wanted to make it in Joliet like it is in Detroit, a city of fear. Remarks of this tenor continued to be voiced by the prosecutor in that he asked the jurors to think of their own death as the result of a crime, referred to

lawlessness ravaging this (Joliet) community, and that an acquittal would be to invite an open season for shooting victims and would encourage "these people" to commit more crimes of violence.

■■ ■ The rule is well settled that a prosecutor may comment on facts presented in the record. (*People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409.) It is, however, equally true that it is improper for a prosecutor to say anything in argument the only effect of which will be to inflame the passion or arouse the prejudice of the jury against a defendant without shedding any light on the paramount question presented to the jury, to-wit, its decision. (*People v. Provo* (1951), 409 Ill. 63, 97 N.E.2d 802; *People v. Dukes* (1957), 12 Ill. 2d 334, 146 N.E.2d 14.) Appeals to the prejudice and fears of the jurors are clearly prohibited. (See *People v. Blackman* (1976), 44 Ill. App. 3d 137, 358 N.E.2d 50, where the prosecutor argued to the jurors that if they acquitted the defendant they should avoid the area of 81st and Western in the city of Chicago. See also *People v. Davis* (1970), 46 Ill. 2d 554, 264 N.E.2d 140.) Remarks by a prosecutor containing racial overtones and made in an apparent attempt to arouse racial fear and animosity and to malign a defendant who is black amount to a clear attempt to undermine the judicial process. *People v. Turner* (1977), 52 Ill. App. 3d 738, 367 N.E.2d 1365. See also *People v. Romero* (1967), 36 Ill. 2d 315, 223 N.E.2d 121, where a defendant's conviction for the unlawful sale of heroin was reversed for *inter alia* the prosecutor's thinly veiled appeal to prejudice because the defendant was Puerto Rican.

The remarks of the prosecutor were not only intemperate but prejudicial. They were not isolated or inadvertent but lengthy and obviously planned. They do not well serve our judicial system or its efforts to afford everyone if not a perfect nevertheless a fair trial.

Counsel for the defendant made repeated objections to the prosecutor's remarks during the trial, contrary to assertions otherwise set forth in the brief of the State. Counsel for the defendant did, however, fail to raise the issue of improper argument in his post-trial motion. The remarks complained of constituted error which affected substantial rights of the defendant and consequently they are considered in this appeal under the "plain error" doctrine. See Supreme Court Rule 615A (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a); *People v. Turner* (1977), 52 Ill. App. 3d 738, 367 N.E.2d 1365; *People v. Romero* (1967), 36 Ill. 2d 315, 223 N.E.2d 121; *People v. Morgan* (1960), 20 Ill. 2d 437, 170 N.E.2d 529; and *People v. Moore* (1956), 9 Ill. 2d 224, 137 N.E.2d 246.

Having concluded that reversible error occurred in the trial of the defendant it is not necessary that the remaining issues presented in this appeal be considered since there is little likelihood that the acts giving rise to them will recur.

For the reasons set forth the judgment of the Circuit Court of Will County is reversed and the case is remanded for a new trial.

Reversed and remanded.

STOUDER, P. J., and BARRY, J., concur.