Fourth Division

                                             June 30, 1998

No. 1-97-1564

THE PEOPLE OF THE STATE OF ILLINOIS,    ) APPEAL FROM THE  

                                        ) CIRCUIT COURT OF

          Plaintiff-Appellee,           ) COOK COUNTY.

                                        )

     v.                                 )

                                        )

LARRY CARTER,                           ) HONORABLE

                                        ) VINCENT BENTIVENGA,

          Defendant-Appellant.          ) JUDGE PRESIDING.

     JUSTICE WOLFSON delivered the opinion of the court:

     A jury found Larry Carter (Carter) guilty of three varieties

of cocaine possession.  It turns out the charge of possession of

a controlled substance with intent to deliver within 1,000 feet

of a school is fatally defective.  Both sides agree.  That

conviction must be reversed.

     The issue we are left with when we review the remaining

possession charges is what to do about the State's evidence and

comments concerning the presence of schoolchildren and prior

police familiarity with the defendant.

     We conclude the conviction for possession of a controlled

substance with intent to deliver should be reversed.  However, we

affirm the conviction for possession of a controlled substance

and remand that cause for resentencing.

FACTS

     On August 7, 1996, a two-count information was filed against

Larry Carter.  In count I Carter was charged with possession of a

controlled substance (cocaine) with intent to deliver "within

1000 feet of the real property comprising a school."  In count

II, Carter was charged with possession of a controlled substance

(the same cocaine as in count I) with intent to deliver.

     The case was tried before a jury.

     Chicago police officer Steven Bocconcelli testified he was a

tactical officer for the 23rd District.  On May 9, 1996, he was

assigned to monitor a corner at the intersection of Ainslie and

Kenmore Avenues.  At about 8:30 p.m. that evening Bocconcelli

began surveillance from an alleyway located about 150 feet away

from the intersection.  Using binoculars, the officer observed

the activity occurring on the corner.  Officers Timothy Glen and

Nick Spencer were positioned nearby in an unmarked police car,

providing back-up for Officer Bocconcelli.

     Officer Bocconcelli said he saw a man wearing a green shirt

and dark-colored jeans standing on the corner.  This man, later

identified as defendant Larry Carter, was approached by a young

black man.  After a brief conversation, the man handed Carter

what appeared to be a single bill of U.S. currency.  Carter then

reached into a plastic bag he was holding in his left hand and

gave the man a small plastic packet.

     Shortly after the first man walked away, a second young man

approached Carter and the same type of exchange took place. 

Officer Bocconcelli testified, based on his experience as a

police officer, he believed Carter was selling drugs.

     Officer Bocconcelli radioed his two back-up officers to pick

him up.  The officers drove to the alleyway.  Officer Bocconcelli

got in the car.  All three officers drove to the corner of

Ainslie and Kenmore.  They got out of the car.

     Officer Bocconcelli and his partners approached the

defendant.  Bocconcelli testified:

     "As we approached Officer Glenn [sic] says, that is Larry

Carter.  ***  As I approached, I said, Larry, I just saw you do

two drug deals."

     Officers Glen and Spencer also testified at trial.  Officer

Glen confirmed that he had been on duty the evening of May 9,

1996, and assigned to act as back-up for a surveillance being

performed by Officer Bocconcelli.  Officer Glen said he

recognized the man "as Larry Carter" as soon as he drove up to

the corner of Ainslie and Kenmore.  He told Officer Bocconcelli

that the man's name was Larry Carter: "I let him know that was

Larry Carter."  

     Officer Glen also testified that when Bocconcelli told

Carter he was being watched, Carter dropped a plastic bag and

took off running.  Officer Glen said he ran after Carter,

apprehended him, and placed him under arrest.  A search incident

to Carter's arrest revealed Carter was wearing a pager.  Carter

also had $34 in U.S. currency, consisting of one $20 bill, one

$10 bill and four $1 bills.

     Both Officers Glen and Spencer testified regarding the steps

they took to inventory the items recovered from Carter, including

the plastic bag retrieved by Officer Bocconcelli.  They said the

plastic bag contained 13 smaller plastic packets which held a

white, rock-like substance believed to be crack cocaine.

     It was stipulated that a forensic chemist examined the 13

packets and the substance contained in them.  The substance in

the packets had a total weight of .91 grams.  Three of the 13

packets were randomly-selected for chemical testing.  The

substance in these packets tested positive for the presence of

cocaine.

     Two other witnesses testified in regard to the enhancement

factor -- the principal of St. Thomas of Canterbury School and an

investigator for the Cook County State's Attorney's office.

     The principal, Christine Boyd, testified that St. Thomas

of Canterbury School is located at 4827 N. Kenmore and the John

T. McCutcheon Branch School is located across the street from St.

Thomas School.

     Principal Boyd said her school accepts students from age

three for preschool through eighth grade.  About 272 children

attend the school.  The school was in session on May 9, 1996.

Using photographs showing the intersection of Ainslie and Kenmore

and the area near the school, Principal Boyd was able to describe

the proximity of the intersection to her school.

     On cross-examination, she said she could not identify Larry

Carter as someone who sold drugs near the school.  On redirect

examination, over objection, she told about the type of activity

she would see on the street during morning hours:

     "Activity is the selling of drugs, using children

     under the ages of 12 on bicycles up and down our street

     with older people as the main sellers that station

     themselves at the corner of Ainslie and Kenmore."

     Neither Principal Boyd nor any other witness testified

children were present in the area when the defendant was

arrested, at about 8:30 p.m.

     Investigator Sullivan testified he measured the distance

from 4859 N. Kenmore (a location near the intersection of Ainslie

and Kenmore) to three area schools, including St. Thomas and

McCutcheon.  He found all three schools were within 1,000 feet of

4859 N. Kenmore.  A diagram he had prepared, which showed the

schools in relation to 4859 N. Kenmore, was admitted in evidence.

     Sullivan testified he had taken the photographs which

Principal Boyd used in her testimony.  Sullivan identified the

photos and said they were a true and accurate depiction of the

area near the intersection of Ainslie and Kenmore.  

     The defendant offered no evidence.

     The jury found Carter guilty of both counts in the

information and of the lesser-included offense of possession of a

controlled substance.  The State had offered instructions and

verdict forms on the lesser-included offense during the

instructions conference.  The convictions were merged and Carter

was sentenced to a single term of five years imprisonment.

DECISION

     1. The within 1,000 feet of a school count

     Before, during, and after trial the defense contended the

school distance count (I) was defective for failure to allege the

possession of cocaine took place "on any public way."  725 ILCS

570/407(b)(2) (West 1996).

     The State acknowledged it had to prove the "public way"

element, but denied it had to allege it.  The trial judge agreed

with the State.  Defendant's motion to dismiss the indictment was

denied.

     After this trial, we decided People v. Jones, 288 Ill. App.

3d 293, 681 N.E.2d 537 (1997).  There, we held the "on any public

way" element was essential to the offense and failure to allege

it was fatal to the charge.

     Now, the State, because of Jones, agrees count I is void. 

We so hold.

     2. Comments and evidence concerning schoolchildren

     There can be no question that Larry Carter was within 1,000

feet of a school when his activities were observed by police

officers.  That fact never was contested by the defense.

     Larry Carter was seen by the officers at about 8:30 p.m.

No one said a child was anywhere near Carter or a school at that

time.

     Yet, from opening statement to rebuttal closing argument,

the prosecution made this a case about schools and

schoolchildren.

     In its opening statement, the prosecution said:

     "This is a very simple case, it is about a drug

     dealer and elementary school children.  It is about an

     individual who makes his trade on a street line[d] with

     elementary school children ***"

     The State's first witness was Christine Boyd, principal of

the St. Thomas school.  On direct examination, she said 272

children attend her school.  The children ranged from

preschoolers three years of age to eighthgraders.  Slightly to

the north is the McCutcheon school, which, she said, serves

children in kindergarten through second grade.

     During direct examination, Ms. Boyd identified several State

photographs.  People's Exhibit 1 is an eight-by-ten color photo

of the St. Thomas school.  It shows about 15 children standing on

the steps of the school.  Other than showing the school exists,

an undisputed fact, the photo has no apparent probative value.

     Defense counsel did not object to admission of the photo.

He did object to Ms. Boyd's testimony on redirect examination. 

She told of seeing drug dealers using children under 12 on

bicycles for the selling of drugs.  She told of patrolling nearby

streets in the early afternoon and prohibiting nighttime

activities at the school to ensure the safety of the school

children.

     In rebuttal closing argument the prosecution, over

objection, elaborated:

     "Children don't get to go to their school, they

     don't get to play at their school at night, they don't

     get to have PTA meetings, they don't get to live like

     civilized citizens because of the defendant because

     people like the defendant have invaded their neighborhood."

     Again, over objection, using Ms. Boyd's testimony, the

prosecution drew a picture of Carter that extended far beyond

the charges against him:

     "Because individuals such as Larry Carter are out

     there selling drugs.  He, as you heard from Christine

     Boyd, and his counterpart are out there all day running

     up and down in bicycles, standing out in traffic as bold

     and as big as life, they have no respect for the law,

     they have no respect for the kids who are trying to get

     an education at this school, they have no respect for this

     Court."

     A prosecutor may dwell on the evil of crime and exhort the

jury to fearlessly administer the law.  People v. Hairston, 46

Ill. 2d 348, 375, 263 N.E.2d 840 (1970).  But where statements

made in closing argument serve no purpose except to inflame the

jury, the statements constitute error.  People v. Tiller, 94 Ill.

2d 303, 321, 447 N.E.2d 174 (1982) (error for State's Attorney to

characterize three murders as a holocaust, similar to the Nazi

holocaust depicted in a television show broadcast the night

before).

     Here, it appears to us the prosecutor's purpose was to

inflame the passion or arouse the prejudice of the jury against

the defendant "without shedding any light on the paramount

question presented to the jury, to-wit, its decision."  People v.

Lurry, 77 Ill. App. 3d 108, 114, 395 N.E.2d 1234 (1979) (error to

make argument based on racial overtones and racial problems);

People v. Blackman, 44 Ill. App. 3d 137, 140, 358 N.E.2d 50

(1976) (improper appeal to juror fears for prosecutor to argue

that jurors, if they acquit, should avoid the area of 81st and

Western and should not let Ruth beat them back to their parked

cars).  Also see, People v. Threadgill, 166 Ill. App. 3d 643, 520

N.E.2d 86 (1988) (error to repeatedly say the jurors' decision

would indicate whether they supported the police who were out

protecting them).

     There was no evidence in this case that this defendant

possessed or sold drugs anywhere in the vicinity of children.

Nor was there any evidence that he was part of a band of drug

dealers plying their trade in the neighborhood.  The prosecutor's

remarks served no purpose other than inflaming the jury.  People

v. Rogers, 187 Ill. App. 3d 126, 138, 543 N.E.2d 300 (1989)

(error for prosecutor to say, without evidentiary support:  "I

guess we are all supposed to hope and believe that drug dealers

who sell drugs to grade school and high school kids are just

pretending.").

     In People v. Watkins, 220 Ill. App. 3d 201, 210, 581 N.E.2d

145 (1991), where the defendant was charged with possession of a

controlled substance, we said we do not condone a prosecutor

arguing:  "Ladies and Gentlemen, how can we ever face our

children, how can we ever tell them to say no to drugs, if we let

somebody like Lonnie Watkins back out on the street?"

   The argument in this case resembles the one made in People v.

Ford, 113 Ill. App. 3d 659, 447 N.E.2d 564 (1983), where the

defendant was charged with unlawful delivery of cannabis.  The

prosecutor argued:

     "*** because if we're talking about sympathies and

     prejudice when we're talking about the elicit [sic]

     business of selling drugs, then I would suggest that

     the Defense look to the poor, innocent, susceptible

     children in our community who are tempted and forced by

     peer pressures ***."  Ford, 113 Ill. App. 3d at 662.

The Court said:

     "It is clear that the prosecutor was making an

     inflammatory appeal to the fears of the jury, and such

     remarks cannot be condoned."  Ford, 113 Ill. App. 3d at

     662.

     We do not consider the prosecution's final argument remarks

in isolation.  They were part of a theme heard and seen

throughout the trial, not the single comment we permitted in

People v. Peterson, 248 Ill. App. 3d 28, 618 N.E.2d 388 (1993).

     The State proved distance from the school through its

investigator and the diagram he prepared.  Distance was an

enhancing factor and had little or nothing to do with the

defendant's behavior on May 9, 1996, at Ainslie and Kenmore.  See

Old Chief v. United States, 519 U.S. 172, 136 L. Ed. 2d 574, 117

S. Ct. 644 (1997).  While the extensive comments and evidence

concerning schools and children would represent prosecutorial 

excess in the trial of count I, they have no arguable relevance

to count II or the lesser-included possession charge.

     The trial judge made no effort to confine schools and

school children evidence to count I.  True, he was not asked to

do so, but there are times when a trial judge's uninvited action

can cure unfair prejudice.  For example, in People v. Marshall,

165 Ill. App. 3d 968, 978, 521 N.E.2d 538 (1988), the trial judge

sua sponte struck a prosecutor's comment that the defendant

intended to deliver the cocaine to the neighborhood, addicts,

children, and other members of the community.  Potential error

was avoided.

     We do not deprecate the potential dangers of drug traffic in

the vicinity of children.  Principal Boyd's concern for her

students is real and justified.  Because the matter is

emotionally charged, however, care must be taken to abide by

principles of relevance, lest improper considerations direct the

conduct of the jury.

     2. Police familiarity with Larry Carter

     Another theme sounded by the State was police familiarity

with Larry Carter before the day he was arrested.

     In opening, the prosecutor said:

     "Officer Glen is going to tell you that he knows the

     defendant, he knows him by name, that is, Larry

     Carter." 

     The promise was kept.  On direct examination of Officer

Glen:

     "Q:  *** did you recognize the defendant?

     A:   Yes, I recognized him as Larry Carter.

     Q:   Had you seen the defendant previous to that day?

     A:   Yes.

                             ***

     Q:   As you approached, did you say anything to

          any of the other officers in the vehicle?

     A:   Yes.  I let them know that was Larry Carter."

     Glen had testified that his duties included "narcotics

surveillance, gang surveillance."

     The point was made again when Officer Bocconcelli testified:

     "A:  My partners, they approached also.  As we approached,

     Officer Glenn (sic) says that is Larry Carter.

     Q:   What did you do if anything?

     A:   As I approached, I said, Larry I just saw you do two

     deals."

     The obvious inference is that Carter had been engaged in

prior illicit drug or gang activity, an implication that has been

criticized by our supreme court.  People v. Stover, 89 Ill. 2d

189, 196, 432 N.E.2d 262 (1982).  Even where a prosecutor does

not argue prior familiarity with a defendant is evidence of

criminal conduct, the implication may be conveyed by testimony

and "is better avoided, unless somehow relevant."  People v.

Bryant, 113 Ill. 2d 497, 514, 499 N.E.2d 413 (1986).

     We have examined the record to determine whether there was

any relevant purpose for repeated references to a narcotics and

gang surveillance officer knowing Larry Carter by name.  We find

none.  

     Contrary to the State's contention, there never was an issue

concerning whether Larry Carter was the man observed by Officer

Bocconcelli.  Defense counsel's cross-examination of the officers

and his final argument were directed at the police account of

what Carter was doing, not at his presence.  In final argument

defense counsel's only point was that there was not enough

evidence Larry Carter passed or possessed cocaine.

     The police familiarity evidence should not have been

admitted.

     3. The impact of the improper comments and evidence

    The State contends Carter failed to preserve for review the

issues he now raises.  It is true that defense objections were

hit and miss during the trial, although, as we have pointed out,

defense counsel did periodically object to Principal Boyd's

testimony, testimony and comments about Officer Glen's

familiarity with Carter, and final argument concerning

schoolchildren.  It also is true that defense counsel made no

effort to preserve any of these errors in his post-trial motion,

a blatant disregard of his client's interests.

     Ordinarily, failure to present an issue in a post-trial

motion results in a procedural default.  People v. Enoch, 122

Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).  We are persuaded,

however, that a plain error analysis is appropriate in this case.

We believe the errors we have discussed, as they apply to count

II and the lesser-included possession offense, are worrisome

enough to invoke the plain error exception to the waiver rule.

134 Ill. 2d R. 615(a); People v. Brandon, 162 Ill. 2d 450, 457-

58, 643 N.E.2d 712 (1994).  Substantial rights are affected. 

People v. Threadgill, 166 Ill. App. 3d at 650; People v. Lurry,

77 Ill. App. 3d at 114.

     In addition, our supreme court has observed that "the waiver

rule is a rule of administrative convenience rather than

jurisdiction, and the goals of obtaining a just result and

maintaining a sound body of precedent may sometimes override

considerations of waiver."  People v. Hicks, 181 Ill. 2d 541,

545, 693 N.E.2d 373 (1998).

     Our decision to address the merits of the defendant's

contentions requires us to examine the admissible evidence heard 

and seen by the jury, then determine whether the errors we have 

identified could have made any difference. 

     There is no litmus test that allows us to scientifically

measure the impact of impropriety on a jury.  At times, when we

engage in a weighing process, we conclude the errors did not

prejudice the defendant.  Reversal, then, is not required.  See

People v. Davis, 285 Ill. App. 3d 1039, 1044, 675 N.E.2d 194

(1996).

   In other cases, confidence in the outcome is shaken.  Strong

evidence or not, "*** a fair trial, in all its stages, is a

fundamental requirement in a criminal prosecution ***."  People

v. Rega, 271 Ill. App. 3d 17, 24, 648 N.E.2d 130 (1995).  Our

responsibility to provide a just result has caused us to examine

an issue not raised by the defendant on appeal.  People v.

Thomas, 277 Ill. App. 3d 214, 218, 660 N.E.2d 184 (1995).

     Here, all error aside, no rational jury could have found the

defendant not guilty of the lesser-included possession charge.

Evidence of possession was uncontradicted and unchallenged.  The

possession conviction is affirmed.

     Whether the defendant possessed the cocaine with intent to 

distribute it is a closer question.  While one officer testified

to seeing two exchanges, at night, from a distance of 100 to 130

feet, through binoculars, neither of the two purported buyers was

stopped.  Carter possessed less than a gram of cocaine.

   We conclude the entirety of improper comments and evidence

well might have tainted the jury's deliberations on the intent to

distribute charge.  That conviction cannot stand.

                           CONCLUSION

     We reverse the defendant's conviction under count I, which

defectively charged him with possession of a controlled substance

within 1,000 feet of a school.  We reverse the defendant's

conviction for possession of a controlled substance with intent

to distribute.  We affirm the defendant's conviction for

possession of a controlled substance and remand that cause to the

trial court for resentencing.

     Because the simple possession conviction that stands is a

lesser-included offense, there is no reason to remand the greater

offense of possession of a controlled substance with intent to

distribute.

     REVERSED IN PART, AFFIRMED AND REMANDED IN PART.

     McNAMARA and SOUTH, JJ., concur.