# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Jenkins*, 2012 IL App (2d) 091168

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID E. JENKINS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-09-1168 |
| Filed | January 19, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for obstruction of justice was reversed where the evidence was insufficient to prove beyond a reasonable doubt that he obstructed the prosecution of his son by giving an officer false information as to whether he had a son, since the essence of the crime of obstruction of justice is the concealment of evidence relating to a criminal investigation or prosecution, the officer who questioned defendant about a minor traffic accident never indicated that he was seeking to arrest defendant's son or that a criminal prosecution was involved, the entire exchange was brief, the confusion arising from the fact that defendant and his son had the same first and last names was "cleared up within seconds," defendant promptly provided the officer with correct information pertaining to his son, despite his purported initial denials of having a son, and the police were able to locate defendant's son. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-CF-877; the Hon. Thomas E. Mueller, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Thomas A. Lilien and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Stephen E. Norris and Sharon Shanahan, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.

Justices Zenoff and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant, David E. Jenkins, was found guilty of obstructing justice (720 ILCS 5/31-4(a) (West 2008)) and was sentenced to an 18-month term of conditional discharge and 100 hours of public service. Defendant contends on appeal that the trial court erred by (1) limiting his examination of his wife and son about a conversation with an Elgin police officer that led to his prosecution, and (2) admonishing his son about the privilege against self-incrimination. We reverse.

¶ 2    The indictment charged defendant with obstructing justice in March 2009, "in that defendant with the intent to obstruct the prosecution of David T. Jenkins, knowingly furnished false information to Officer Barnard, a police officer, as to whether he had a son." There is no dispute that David T. Jenkins was defendant's then 17-year-old son.

¶ 3    At trial, during his opening statement, defense counsel assured the jury that it would hear a different account of defendant's brief conversation with Barnard. Defense counsel indicated that defendant was speaking with his son on a cellular telephone when Barnard arrived, and defendant's son heard the conversation over the telephone. In addition, defendant's wife, Carol Jenkins, was present during the exchange between Barnard and defendant. Defense counsel indicated that defendant's wife and son would give the following account of the exchange between Barnard and defendant:

"A male police officer comes up and says I'm looking for David Jenkins. I'm he. Do you own a white Mustang? No, I don't, but my son does. Does he go by Junior? No he doesn't he goes by David Theodore Jenkins. Is he here? No. Do you know where he is? No. He lives with his mother."

¶ 4    The State's first witness was Elgin police officer Jason Barnard, who testified that he spoke to defendant at defendant's home. Barnard identified himself as a police officer and

told defendant that he was investigating a minor traffic accident and looking for "a" "David Jenkins." Defendant indicated that he was David Jenkins. Based on his investigation, Barnard expected the driver of the Mustang to be younger than defendant, so he asked defendant whether there was a "Junior David Jenkins." Defendant responded that there was not. Barnard testified that he then asked defendant whether he had "a son named David Jenkins." According to Barnard, defendant answered "no." Barnard testified, "At that point I asked him, so you don't have a son named David Jenkins who drives a white Mustang?" According to Barnard, defendant said that he did not.

¶ 5 Barnard further testified that Officer Heather Farrell approached, and defendant thereafter stated that he did have a son named David Jenkins, who did not own the Mustang but whose mother owned it. Barnard testified that he placed defendant "under arrest for obstruction."

¶ 6 On cross-examination, Barnard admitted that defendant was being truthful when defendant told him that he was David Jenkins. Barnard admitted that there was a woman present during the conversation with defendant, but he could not recall what she was doing during the conversation. Barnard could not recall whether he made any statements to her, and he could not recall whether she made any statements to him. Barnard admitted that he spoke with defendant "[m]aybe two minutes, if that," prior to arresting him.

¶ 7 Elgin police officer Heather Farrell testified that she was on duty with Barnard. Farrell testified that she heard the conversation between Barnard and defendant. Farrell testified that "[t]he conversation they were having was whether or not he had a son named David Jenkins, and the Defendant had said no."

¶ 8 On cross-examination, Farrell acknowledged that there was a white female standing on the stairs just inside the door, approximately six feet from her and Barnard and defendant. Farrell testified that she observed the female in the background throughout the conversation.

¶ 9 Before the defense proceeded with its case-in-chief, the State asked the trial court to advise defendant's son of his fifth amendment privilege against self-incrimination. The State indicated that, if defendant's son testified that he overheard the conversation between defendant and Barnard, he might risk being prosecuted for eavesdropping. The State also argued that anything defendant's son heard over the telephone would be inadmissible hearsay. With respect to the hearsay issue, defense counsel responded that defendant's son's testimony would contradict, and thereby impeach, Barnard's testimony and was admissible for that purpose. Defense counsel also argued that, although defendant's son heard the conversation over the telephone, he was no less competent than defendant's wife–who was physically present during the conversation–to testify as to what he heard. That suggestion prompted the State to object that defendant's wife's testimony would also be inadmissible hearsay. The trial court ruled that defendant "[could] certainly use [his wife's and son's testimony] to impeach the officer's testimony," but could not bolster his own testimony "by having [his wife and son] parrot what he is going to say he said."

¶ 10 Before defendant's son took the stand, the trial court warned him that his testimony might subject him to prosecution for eavesdropping and advised him of the privilege against self-incrimination. Defendant's son initially chose to testify. However, when the questioning turned to the subject of whether he had overheard the conversation between defendant and

Barnard, the trial court reiterated that defendant's son might face a charge of eavesdropping as a result of his testimony and that he could not be compelled to testify. At that point, defendant's son declined to testify further.

¶ 11 Defendant then called his wife, Carol Jenkins, as a witness. Defense counsel asked whether Barnard told defendant that he was looking for David Jenkins. The State objected, stating, "This isn't impeachment." The trial court sustained the objection. Defense counsel next inquired whether the officer asked defendant if he was David Jenkins. The State objected and a sidebar ensued at which the trial court implied that the answer to the question would be inadmissible because it would not contradict Barnard's testimony. Defense counsel next inquired whether the officer asked if David T. Jenkins lived at defendant's residence. The State objected that "[i]t doesn't contradict anything the officer testified to." The trial court sustained the objection. The trial court also sustained the State's objection when defense counsel asked whether the officer had asked about David T. Jenkins' whereabouts. Defense counsel asked no further questions about the conversation between defendant and Barnard.

¶ 12 Defendant testified that Barnard initially indicated that he was looking for David Jenkins. Defendant said that he was David Jenkins. Barnard asked whether defendant owned a white Mustang. Defendant responded that he did not but his son did. Barnard asked if defendant knew where his son was. Defendant responded that he did not; he lived in Algonquin with his mother. Barnard asked if defendant's son "goes by Junior." Defendant responded that his son "goes by David Theodore Jenkins."

¶ 13 Following the close of evidence, defendant moved for a mistrial. The motion was accompanied by a written offer of proof indicating that Carol Jenkins was prepared to testify that the conversation between defendant and Barnard was as follows:

> "Officer, 'I'm looking for David Jenkins. Are you David Jenkins?'
>
> Defendant, 'Yes, I'm David Jenkins.'
>
> Officer, 'Do you have a son named David Jenkins Jr.?'
>
> Defendant, 'No, I do not. I have a son named David Theodore Jenkins.'
>
> Officer, 'Does he live here?'
>
> Defendant, 'No, he does not.'
>
> Officer, 'Well you know where he is?'
>
> Defendant, 'I don't know where my son is.'
>
> Officer, 'Does he have a white Mustang?'
>
> Defendant, 'Yes, he does.' "

¶ 14 According to the offer of proof, had defendant's son not invoked his privilege against self-incrimination, he would have testified that he overheard the following conversation between defendant and the police officer:

> "Officer, 'Are you David Jenkins?'
>
> [Defendant], 'I'm he.'
>
> Officer, 'Is your son Jr.?'

[Defendant], 'No, he is Theodore.'

Officer, 'Do you own a white Mustang.'

[Defendant], 'No, my son does.'

Officer, 'Is your son here?'

[Defendant], 'No. He lives with his mother.'

Officer, 'You're under arrest.' "

¶ 15    After defendant rested, the trial court conducted a conference on jury instructions. The parties presented their closing arguments, and the trial court instructed the jury. Following deliberations, the jury found defendant guilty of obstructing justice. The trial court entered judgment on the verdict. Defendant thereafter filed a motion for a new trial, which the trial court denied.

¶ 16    At sentencing, the trial court commented:

"[It is] frustrating to the Court that this *** is cleared up in seconds when the female officer comes around the corner, makes the connection with [defendant], and because of her prior history with [defendant] and his son, *** it's within seconds that it becomes obvious that there is a son that he has lied to Officer No. 1.

There's no dollars expended in some lengthy investigation that results from his lying. This is something that's cleared up within seconds."

The trial court thereafter sentenced defendant to an 18-month term of conditional discharge and 100 hours of public service. Defendant filed a timely notice of appeal.

¶ 17    Defendant first contends that the trial court erred when it ruled that the testimony of defendant's wife and son about the conversation between defendant and Barnard was inadmissible hearsay. As our supreme court has noted, "[h]earsay is an out-of-court statement offered to establish the truth of the matter asserted [citations] and testimony about an out-of-court statement which is used for a purpose other than to prove the truth of the matter asserted in the statement is not hearsay." *People v. Banks*, 237 Ill. 2d 154, 180 (2010); see also *People v. Dunmore*, 389 Ill. App. 3d 1095, 1106 (2009) (citing *People v. Evans*, 373 Ill. App. 3d 948, 964 (2007)). According to the offer of proof, Barnard made only two statements during the conversation: "I'm looking for David Jenkins," and "You're under arrest." The remainder of what Barnard said was a series of questions that did not assert anything and, therefore, could not possibly be offered to establish the truth of the matter asserted.

¶ 18    We agree with defendant that the questions Barnard posed to him and the answers he gave were not hearsay. Occurrence witnesses testify "because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation." *Tzystuck v. Chicago Transit Authority*, 124 Ill. 2d 226, 234-35 (1988). Here, the witnesses and participants included defendant, Barnard, Farrell, defendant's wife, and defendant's son. Any of these individuals were capable of testifying as to their version of events. Barnard testified regarding the questions he asked defendant and defendant's responses. Farrell was allowed to testify regarding the questions Barnard asked defendant and defendant's responses. For the trial court to thereafter bar defendant's wife and son from testifying about the questions

Barnard asked and defendant's responses was error. The heart of the dispute between the parties was what questions Barnard asked and what answers defendant gave. The trial court ruled that defendant's wife and son could offer only testimony that impeached Barnard's testimony. Accordingly, we find that the trial court abused its discretion when it ruled that the testimony of defendant's wife and son was hearsay and barred their testimony. See *Dunmore*, 389 Ill. App. 3d at 1105 (citing *People v. Wheeler*, 226 Ill. 2d 92, 132 (2007)).

¶ 19    The State's assertion that defendant's own statements (as related in the offer of proof) were hearsay is meritless. Defendant's statements would have been offered not to prove the truth of the matters asserted–that defendant was David Jenkins, that he had a son named David Theodore Jenkins (not David Jenkins, Jr.), and that his son owned or drove a Mustang–but rather to contradict Barnard's testimony. According to the State, "the testimony of [defendant's] wife and son was offered to show the truth or falsity of defendant's statements to police, which is clearly inadmissible hearsay." To the contrary, given the State's theory of the crime, evidence that defendant told Barnard that he had a son named David Theodore Jenkins would impeach the State's theory that defendant truly intended "to obstruct the prosecution of David T. Jenkins [when he] knowingly furnished false information to Officer Barnard, a police officer, as to whether he had a son." The State submitted evidence that defendant purportedly made other statements and that *those* statements were untrue. The State's case necessarily fails if defendant did not in fact make the statements that the State attributed to him. The State's argument seems to assume that, even if defendant told Barnard that he had a son named David Jenkins, he would still be guilty of obstructing justice unless that statement was true. The most obvious flaw in the argument is that, whatever defendant told Barnard, he did not bear the burden of proving that his statements were true. Rather, the State bore the burden of proving that defendant's statements were false. See Illinois Pattern Jury Instructions, Criminal, No. 2.03 (4th ed. 2000) (providing that the "State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."). Thus, if the jury believed that defendant told Barnard that he had a son named David Jenkins who owned or drove a white Mustang, it would have been required to acquit defendant unless *the State* offered evidence that those statements were untrue.

¶ 20    Defendant next contends that the trial court abused its discretion when it admonished his son about the privilege against self-incrimination. Defendant argues that his son's testimony would not have afforded the State any grounds for charging his son with eavesdropping. Defendant's son invoked the privilege against self-incrimination before any questioning about the conversation he heard over the cell phone.

¶ 21    Eavesdropping on a law enforcement officer's conversation is a Class 1 felony if the officer was engaged in his or her official duties. 720 ILCS 5/14-4(b) (West 2008). A person commits eavesdropping when he or she "[k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing *** any part of any conversation *** unless he does so *** with the consent of all of the parties to such conversation." 720 ILCS 5/14-2(a)(1) (West 2008). The term "eavesdropping device" means "any device capable of being used to hear or record oral conversation or intercept, retain, or transcribe electronic

communications whether such conversation or electronic communication is conducted in person, by telephone, or by any other means; Provided, however, that this definition shall not include devices used for the restoration of the deaf or hard-of-hearing to normal or partial hearing." 720 ILCS 5/14-1(a) (West 2008).

¶ 22    In *People v. Armbrust*, 2011 IL App (2d) 100955, the reviewing court discussed cases concerning telephones, including cellular phones, and whether and to what extent they constituted an eavesdropping device:

"It is well recognized that a phone does not constitute an eavesdropping device unless it has been altered in such a manner that it can no longer perform its customary functions of transmitting and receiving sounds. *People v. Gervasi*, 89 Ill. 2d 522, 526-27 (1982). Accordingly, an unaltered phone is not considered an eavesdropping device, even where the receiver is tilted so that another person may listen in or a person listens on an extension. *People v. Shinkle*, 128 Ill. 2d 480, 489 (1989) (where an officer listened on an extension with his hand covering the mouthpiece, the phone was not transformed into an eavesdropping device because the officer's hand did nothing to alter the phone's ability to transmit sound); *People v. Gaines*, 88 Ill. 2d 342, 363 (1981) (a phone was not an eavesdropping device where an officer listened on an extension, because the eavesdropping statute is not directed at phones that have not been functionally altered); *People v. Bennett*, 120 Ill. App. 3d 144, 149 (1983) (a switchboard was not an eavesdropping device because it could transmit messages); *People v. Petrus*, 98 Ill. App. 3d 514, 517 (1981) (a phone was not considered an eavesdropping device where the receiver was held so that both the officer and the informant could hear what the defendant was saying). The addition of a separate device to a phone to allow others to hear, however, does convert the phone into an eavesdropping device. See *People v. Perez*, 92 Ill. App. 2d 366, 372-73 (1968) (apparatus that screwed onto the phone receiver to allow others to hear constituted an eavesdropping device)." *Armbrust*, 2011 IL App (2d) 100955, ¶ 7.

¶ 23    Under the principles discussed in *Armbrust*, it is clear that a cellular telephone is not an eavesdropping device unless it has been functionally altered. See *id.* (citing *Gervasi*, 89 Ill. 2d at 526-27). Here, the testimony from both Barnard and defendant reflected that Barnard was aware that defendant was engaged in a cellular telephone conversation. Barnard testified that, when he and another officer approached the front door to defendant's house, he heard the backdoor close. Barnard then walked to the backyard, where he observed defendant "hitting the back door two to three times, and *** saying oh, no; oh, no." Barnard testified that defendant was holding a cellular telephone. Defendant reentered the house and Barnard walked to the backdoor and began to speak with defendant. The State presented no evidence that defendant's cellular phone had been functionally altered in any manner. Therefore, defendant's cellular phone was not an eavesdropping device under the statute. See *People v. Williams*, 239 Ill. 2d 119, 127 (2010) (reviewing *de novo* the construction of a statutory term). As such, defendant's son could not have been lawfully charged with violating the eavesdropping statute. Because defendant's son could not have committed any violation of the eavesdropping statute, there was no danger of incrimination. See *People v. Medrano*, 271 Ill. App. 3d 97, 102 (1995) (citing *People v. Redd*, 135 Ill. 2d 252, 304 (1990)). Accordingly,

the trial court erred when it admonished defendant's son regarding the privilege against self-incrimination if he testified regarding the conversation between defendant and Barnard.

¶ 24    We next determine whether the trial court's errors in precluding defendant's wife and defendant's son from testifying were harmless beyond a reasonable doubt. In doing so, we consider defendant's need to testify to present a defense as part of that inquiry. See *People v. Averett*, 237 Ill. 2d 1, 10-11 (2010) (citing *People v. Patrick*, 233 Ill. 2d 62, 75-76 (2009)). Further, in determining whether, in the absence of the errors, the outcome of the trial would have been different, review is made of the proceedings as a whole, based upon examination of the entire record. *People v. Howard*, 147 Ill. 2d 103, 148 (1991). Our review of the record reveals that there existed significant gaps in defendant's theory of the case, which required that he testify. The trial court's rulings effectively barred defense counsel from asking defendant's wife what defendant told Barnard about his son and barred defendant's wife from responding that defendant told Barnard that his son was named David Theodore Jenkins and was not called "David Jenkins, Jr." The trial court's rulings also effectively impeded defendant's wife's testimony that defendant told Barnard that his son drove a white Mustang. After the trial court barred defendant's wife and defendant's son from testifying to the events that transpired between Barnard and defendant, only defendant could provide testimony regarding his actions after Barnard approached him and asked questions regarding the identity and whereabouts of defendant's son. Because the trial court refused to allow the occurrence witnesses to testify on defendant's behalf as to these points, defendant's testimony was his only means to present a defense. Therefore, in reviewing the impact of the trial court's errors in light of the facts of the instant case, we determine that the errors were not harmless beyond a reasonable doubt and that reversal is required. See *Patrick*, 233 Ill. 2d at 75-76.

¶ 25    In reversing the trial court's judgment, we must necessarily address the double jeopardy implications. The double jeopardy clause (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10) prohibits retrial for the purpose of affording the prosecution another opportunity to supply evidence that it failed to present in the first proceeding, even if that first proceeding resulted in a jury finding of guilty. *Burks v. United States*, 437 U.S. 1, 11 (1978). It does not, however, preclude retrial where a conviction has been set aside because of an error in the proceedings leading to the conviction. *People v. Mink*, 141 Ill. 2d 163, 173-74 (1990). Therefore, to prevent the risk of exposing defendant to double jeopardy, we must also consider whether the State presented sufficient evidence to prove defendant guilty beyond a reasonable doubt. See *People v. Morris*, 135 Ill. 2d 540, 549-51 (1990); *People v. Gargani*, 371 Ill. App. 3d 729, 737 (2007). Because the State otherwise may retry defendant, double jeopardy requires us to rule upon defendant's sufficiency-of-the-evidence claim. See *People v. Taylor*, 76 Ill. 2d 289, 309 (1979).

¶ 26    The appropriate standard of review in ruling on the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brooks*, 187 Ill. 2d 91, 132 (1999). In reviewing the sufficiency of the evidence, the critical inquiry is "whether the evidence reasonably supports a guilty finding regardless of whether the evidence is direct or circumstantial, or whether the trial was by bench or jury."

*People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 38 (citing *People v. Lissade*, 403 Ill. App. 3d 609, 612 (2010)).

¶ 27    Upon careful and thorough review of the record in the light most favorable to the State, this court finds the evidence insufficient to support the jury's verdict of guilty beyond a reasonable doubt. The State was required to prove that (1) defendant knowingly furnished false information to Barnard "as to whether he had a son," and (2) it was furnished with the intent to obstruct the prosecution of his son, David T. Jenkins. See *People v. Gray*, 146 Ill. App. 3d 714, 716 (1986). Even if defendant furnished false information to Barnard as to whether he had a son, that, in and of itself, is insufficient to support the jury's verdict. See *People v. Jackiewicz*, 163 Ill. App. 3d 1062, 1065 (1987) (stating that the obstruction-of-justice statute requires more than the giving of false information to the police). The statute requires that, when the false information is given, it must be given with the intent to prevent the prosecution of any person and with the knowledge that the information was untrue. *Id.* Here, the only testimony reflecting the prosecution of David T. Jenkins occurred when Barnard told defendant that he was investigating a minor traffic accident and looking for "a" "David Jenkins." The essence of the crime is the concealment of evidence relating to a criminal investigation or prosecution. *People v. Ivy*, 166 Ill. App. 3d 266, 269 (1988). Barnard never indicated or testified that he was seeking to arrest David T. Jenkins or otherwise apprehend David T. Jenkins; therefore, defendant was never informed that a criminal matter or a prosecution was involved. Moreover, the entire exchange lasted two minutes, "if that," and the trial court found that the entire matter was "cleared up within seconds." In *Ivy*, the reviewing court reversed the defendant's conviction of obstruction of justice, finding that the evidence reflected that the defendant cooperated with the police and that his cooperation led to the arrest of two suspects in a shooting, despite the defendant's providing the police with a false address and leaving the police station before the officers had finished interviewing him. Similarly, defendant here, and in much less time, provided Barnard and Farrell with correct information pertaining to David T. Jenkins and his access to a white Mustang, despite defendant's initial response that there was not a "Junior David Jenkins" or his purported denials of having a son. As the trial court noted, it was "cleared up within seconds."

¶ 28    It is our duty to carefully examine the evidence and, if we are of the opinion that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, we must reverse the judgment. *Id.* at 270. Based upon an examination of the entire record before us, we conclude that the State failed to present proof of any intent by defendant to obstruct justice. In a time span of less than two minutes, defendant cooperated with the police and his cooperation enabled the police to thereafter determine who David T. Jenkins was and locate him. We find that the evidence is wholly insufficient to prove defendant guilty beyond a reasonable doubt of obstruction of justice.

¶ 29    Because the State's evidence is insufficient to sustain defendant's conviction, we determine that defendant would be subject to double jeopardy. A retrial of defendant is, therefore, barred. See *Burks*, 437 U.S. at 11-18; *People v. Holloway*, 92 Ill. 2d 381, 386-87 (1982); *Taylor*, 76 Ill. 2d at 309 (prohibiting a retrial of a defendant where the evidence presented by the prosecutor at the first trial was insufficient to convict, because retrial would

subject the defendant to double jeopardy).

¶ 30        For the foregoing reasons, we reverse the judgment of the circuit court of Kane County.

¶ 31        Reversed.