THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRENDA THOMAS, Defendant-Appellant.

First District (3rd Division)    No. 1—94—0797

Opinion filed December 29, 1995.—Rehearing denied January 19, 1996.

Rita A. Fry, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a bench trial, defendant, Brenda Thomas, was convicted of reckless homicide (720 ILCS 5/9—3(a) (West 1992)) and failure to report an accident (625 ILCS 5/11—401(b) (West 1992)). She was sentenced to concurrent extended terms of eight years' imprisonment for reckless homicide and five years' imprisonment for failure to report an accident. On appeal, defendant asserts that (1) she was substantially prejudiced by the admission of improper evidence and argument about her purported, but uncharged, theft of the victim's wallet; (2) she was substantially prejudiced by the inaccurate certified copy of a prior conviction; (3) she was deprived of due process by the trial court's misapprehension of the proper grounds for a new trial; and (4) her extended-term sentence was excessive.

At trial, Maria Marquez, the victim's wife, testified that she and her husband spent the afternoon of February 18, 1993, paying bills. When he brought her home at 6 p.m., he had $460 to $480 in his wallet in his back pocket. Ms. Marquez acknowledged that her husband always carried a knife and identified the knife found at the scene as one resembling his knife.

Defendant testified that the victim, Enrique Marquez, approached her in his vehicle around 6 p.m. as she was walking near South 47th Avenue and Roosevelt Road in Cicero, Illinois. Defendant recognized him from two previous sexual dates. After she got into his car, Marquez asked for oral sex and they agreed on a price of $20. In a nearby factory parking lot, Marquez pulled down his pants, but complained that defendant insisted on using a condom. After the oral sex, Marquez pulled up his pants and drove to a nearby alley to drop off defendant.

When Marquez stopped the car, he told defendant to give back $10 because she had used a condom. Defendant got out of the car and Marquez followed, leaving the car running. He went around to the passenger side where he grabbed defendant's coat collar. While holding an open knife blade in his hand, he ordered her to give him the $10.

According to defendant, she said, "We don't have to go through this" and got back into the car. She locked the doors as Marquez came around to the driver's side and started beating on the window. He was yelling, "Open the doors, why are you doing this?" Defendant shifted the car into drive and drove off. As she did so, Marquez jumped on the car's hood with the knife still in his hand. Even though Marquez blocked most of her view through the windshield, defendant pressed on the accelerator, but did not turn the steering wheel.

A second later, the car hit something, went up in the air, and turned over. Defendant unlocked the door and ran down the alley without looking to see where Marquez was. She stated that she was scared that he still had the knife and would come after her.

Defendant denied taking Marquez's wallet. She admitted that she had prior convictions and a certified copy of an armed robbery conviction was admitted into evidence.

Much of defendant's statement to the police was similar to her trial testimony. Assistant State's Attorney Joseph Panarese admitted that he summarized defendant's oral statement and added information to the facts she related. The only significant difference between her testimony and the statement was that her statement indicates that she swerved back and forth with Marquez on the hood in an effort to get him off the car.

Lawrence Kooy, an auto mechanic, testified that he observed part of the incident from across the street 75 feet away. He saw a red car stopped in the alley. A white man was standing by the driver's side and a black woman was on the passenger's side. They were arguing, but Kooy could not hear what they were saying. The man slammed the door and went around to the passenger's side. After he heard the

man say, "Baby, don't do me this way," the woman got in the car. Kooy heard what he thought was the car's power lock. The man tried unsuccessfully to open the passenger's side door and then went around to the other side as the woman moved to the driver's seat. The man tried to open the driver's side door, then jumped on the car's hood with his face in the windshield.

Seconds later, Kooy saw the car moving straight down the alley. After 30 to 40 feet, Kooy lost sight of the car, but heard a crash within seconds. He ran to the alley and saw the car upside down on its roof on the snow-covered ground. No one was near the car or running away. Five minutes later, he called the police. He then returned to the scene and saw a man under the car.

Cicero police officer David Ciancio testified that he arrived at the alley at 6 p.m. on February 18, 1993, where he saw an overturned car with a man pinned underneath. The man was not moving or breathing. After personnel from the fire department removed the body from under the car, Ciancio and another police officer searched Marquez's clothing while evidence technicians searched the car. Police officer Hilger and two other officers spent 15 to 20 minutes cordoning off and searching a 500-square-foot area, which was covered with at least 1¹/₂ inches of fresh snow. No wallet or identification was found in Marquez's clothes, car, or the surrounding area. However, a knife with an open blade was found 30 to 40 feet from the car. Marquez's wife identified the knife as resembling her husband's.

There was a stipulation that Barry Lifechultz, the medical examiner who performed the autopsy, would testify that Marquez was 5 feet 10 inches tall and weighed 251 pounds. He died of asphyxia due to being trapped under the vehicle.

The trial court found defendant guilty of reckless homicide and failure to report an accident, then denied her motion for a new trial.

At the sentencing hearing, the State amended the certified copy of conviction to read robbery instead of armed robbery. Following aggravation and mitigation, the trial court sentenced defendant to concurrent extended-term sentences under section 5—8—2 of the Unified Code of Corrections (730 ILCS 5/5—8—2 (West 1992)) based on her robbery conviction (730 ILCS 5/5—5—3.2(b)(1) (West 1992)). She received eight years' imprisonment for reckless homicide and five years' imprisonment for failure to report an accident. After citing defendant's extensive criminal background, which involved predominantly prostitution-related misdemeanors, the trial court stated that the sentences were necessary to serve defendant's best interests for rehabilitation and necessary to deter others from committing the same crime. Defendant's motion to reconsider the sentence was denied.

■ Our first task is to consider whether there was sufficient evidence to convict defendant of reckless homicide. Although defendant did not raise the sufficiency argument in her appeal, the waiver rule (157 Ill. 2d R. 341(e)(7)) is an admonition to the parties, not a limitation on the jurisdiction of reviewing courts. (*In re C.R.H.* (1994), 163 Ill. 2d 263, 274; *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 437.) Furthermore, Supreme Court Rule 366(a)(5), which involves the powers of a reviewing court and its scope of review, provides that a reviewing court has the authority to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." 157 Ill. 2d R. 366(a)(5).

■ In furtherance of our responsibility to provide a just result, we will discuss the sufficiency of the evidence. (*In re C.R.H.*, 163 Ill. 2d at 274.) Viewing the evidence in the light most favorable to the prosecution (*People v. Williams* (1995), 165 Ill. 2d 51, 55) and considering that the trial court heard the witnesses, it is our duty to carefully examine the evidence. (*People v. Young* (1989), 128 Ill. 2d 1, 48, 538 N.E.2d 453.) After carefully reviewing the record, it is our opinion that the evidence is not sufficient to remove all reasonable doubt of defendant's guilt and is not sufficient to create an abiding conviction that she is guilty of reckless homicide. (*Young*, 128 Ill. 2d at 48.) Because the due process clause of the fourteenth amendment (U.S. Const., amend. XIV) protects a defendant against conviction except upon proof beyond a reasonable doubt (*Young*, 128 Ill. 2d at 48), we must reverse the reckless homicide conviction.

The evidence shows that defendant was in fear for her life when she drove off with Marquez on the hood of the car. She was fleeing from Marquez, who had threatened her with a knife.

The evidence about defendant possibly stealing Marquez's wallet was irrelevant to the issue of reckless homicide and was clearly introduced to diminish her credibility. Although there was evidence that Marquez had the wallet in his back pocket shortly before he met defendant and did not have it when the police arrived, it is a quantum leap to conclude that defendant stole it. There was no evidence that defendant took the wallet. Anyone at the scene could have stolen the wallet before the police arrived. After Kooy arrived at the scene, he left to call the police, returning five minutes later. During that time, anyone could have taken the wallet.

Although defendant's written statement to the police stated that she swerved the car in an effort to get Marquez off the hood, the only testimony at trial was that she drove straight. Not only did defendant testify that she did not turn the wheel as she drove off, but

Kooy testified that he watched the car go in a straight line for 30 to 40 feet down the alley seconds before the crash.

The most important evidence presented at trial was that Marquez's open knife was found near the car after it turned over. Defendant's unrebutted testimony was that Marquez was holding an open knife in his hand when he grabbed her coat collar and demanded $10 back. When he jumped on the hood of the car, he was still holding the knife. In corroboration of that evidence, Officer David Ciancio testified that an open knife, identified by Marquez's wife as resembling her husband's, was found 30 to 40 feet from the car.

Defendant was alone in the alley with a large man, carrying a knife, in the midst of a heated argument. Under those circumstances, it was reasonable for defendant to try to escape from Marquez. Therefore, her actions did not constitute reckless homicide as contemplated by the statute. Accordingly, we reverse defendant's reckless homicide conviction. In contrast, we affirm defendant's conviction for failure to report an accident because she was proven guilty beyond a reasonable doubt of that offense.

■ Based on our decision, defendant's first three issues are moot. Thus, the final issue is whether the five-year extended-term sentence for failure to report an accident is excessive. Defendant asserts that the sentence was excessive in light of the nature of the offense and the substantial evidence of mitigation. Not only do the unusual circumstances of this incident make it unlikely to occur again, defendant argues, but she expressed remorse for her actions in both the presentence report and her comments to the trial court. Although those issues were not specifically raised in her motion to reconsider the sentence, they have not been waived. *People v. Lewis* (1994), 158 Ill. 2d 386, 390, 634 N.E.2d 717.

After stating that it considered defendant's age, education, family background, and character as well as the nature of the offense, the trial court found as follows:

> "This defendant has a history of proven criminal activity which has resulted in felony convictions, and yet this defendant persists in engaging in criminal activity.
>
> * * *
>
> The defendant is in need of correctional treatment and is sentenced to an extended term
>
> * * *
>
> These sentences are necessary in that said sentences would serve the best interests of this defendant for rehabilitation and also necessary to deter others from committing the same crime."

We find that the trial court abused its discretion when it sentenced defendant to five years' imprisonment for failure to report an accident. An abuse of discretion is shown when the sentence was based on improper considerations or is otherwise erroneous. (*People v. Conley* (1983), 118 Ill. App. 3d 122, 133.) While the trial court had the discretion to impose an extended-term sentence under section 5—8—1(c) of the Unified Code of Corrections (730 ILCS 5/5—8—1(c) (West 1992)), which is three to six years' imprisonment, the trial court improperly based the five-year sentence on defendant's continuing criminality and deterrence to others.

Given the facts of this case, deterrence was an improper factor. After Marquez threatened defendant with a knife, she drove away in the car. Marquez jumped on the car, then the car hit a pole and turned over, trapping Marquez under the car. Not knowing that Marquez was trapped, defendant ran for fear that Marquez would follow her with his knife. That is not the type of conduct for which a severe sentence would deter others.

Moreover, defendant's continuing criminal history consisted overwhelmingly of prostitution-related misdemeanors. That is not the type of continuing criminality that resulted in this incident. Since this court has the power to reduce the sentence if the trial court abused its discretion (*People v. Cabrera* (1987), 116 Ill. 2d 474, 493-94, 508 N.E.2d 708), we reduce the sentence to three years' imprisonment.

Based on the foregoing, we reverse the reckless homicide conviction, affirm the conviction for failure to report an accident, and reduce the sentence to three years' imprisonment.

Affirmed in part; reversed in part; and reduced in part.

GREIMAN, P.J., and RIZZI, J., concur.