THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY CARTER, Defendant-Appellant.

First District (4th Division)   No. 1—97—1564

Opinion filed June 30, 1998.

Howard M. Rubin, of DePaul Legal Clinic, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William Toffenetti, and Bryan Hofeld, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:
A jury found Larry Carter (Carter) guilty of three varieties of

cocaine possession. It turns out the charge of possession of a controlled substance with intent to deliver within 1,000 feet of a school is fatally defective. Both sides agree. That conviction must be reversed.

The issue we are left with when we review the remaining possession charges is what to do about the State's evidence and comments concerning the presence of schoolchildren and prior police familiarity with the defendant.

We conclude the conviction for possession of a controlled substance with intent to deliver should be reversed. However, we affirm the conviction for possession of a controlled substance and remand that cause for resentencing.

## FACTS

On August 7, 1996, a two-count information was filed against Larry Carter. In count I Carter was charged with possession of a controlled substance (cocaine) with intent to deliver "within 1000 feet of the real property comprising a school." In count II,. Carter was charged with possession of a controlled substance (the same cocaine as in count I) with intent to deliver.

The case was tried before a jury.

Chicago police officer Steven Bocconcelli testified he was a tactical officer for the 23rd District. On May 9, 1996, he was assigned to monitor a corner at the intersection of Ainslie and Kenmore Avenues. At about 8:30 p.m. that evening, Bocconcelli began surveillance from an alleyway located about 150 feet away from the intersection. Using binoculars, the officer observed the activity occurring on the corner. Officers Timothy Glen and Nick Spencer were positioned nearby in an unmarked police car, providing back-up for Officer Bocconcelli.

Officer Bocconcelli said he saw a man wearing a green shirt and dark-colored jeans standing on the corner. This man, later identified as defendant Larry Carter, was approached by a young black man. After a brief conversation, the man handed Carter what appeared to be a single bill of United States currency. Carter then reached into a plastic bag he was holding in his left hand and gave the man a small plastic packet.

Shortly after the first man walked away, a second young man approached Carter and the same type of exchange took place. Officer Bocconcelli testified, based on his experience as a police officer, he believed Carter was selling drugs.

Officer Bocconcelli radioed his two back-up officers to pick him up. The officers drove to the alleyway. Officer Bocconcelli got in the car. All three officers drove to the corner of Ainslie and Kenmore. They got out of the car.

Officer Bocconcelli and his partners approached the defendant. Bocconcelli testified:

> "As we approached Officer Glenn [sic] says, that is Larry Carter. *** As I approached, I said, Larry, I just saw you do two drug deals."

Officers Glen and Spencer also testified at trial. Officer Glen confirmed that he had been on duty the evening of May 9, 1996, and assigned to act as back-up for a surveillance being performed by Officer Bocconcelli. Officer Glen said he recognized the man "as Larry Carter" as soon as he drove up to the corner of Ainslie and Kenmore. He told Officer Bocconcelli that the man's name was Larry Carter: "I let him know that was Larry Carter."

Officer Glen also testified that when Bocconcelli told Carter he was being watched, Carter dropped a plastic bag and took off running. Officer Glen said he ran after Carter, apprehended him, and placed him under arrest. A search incident to Carter's arrest revealed Carter was wearing a pager. Carter also had $34 in United States currency, consisting of one $20 bill, one $10 bill and four $1 bills.

Both Officers Glen and Spencer testified regarding the steps they took to inventory the items recovered from Carter, including the plastic bag retrieved by Officer Bocconcelli. They said the plastic bag contained 13 smaller plastic packets which held a white, rock-like substance believed to be crack cocaine.

It was stipulated that a forensic chemist examined the 13 packets and the substance contained in them. The substance in the packets had a total weight of .91 grams. Three of the thirteen packets were randomly selected for chemical testing. The substance in these packets tested positive for the presence of cocaine.

Two other witnesses testified in regard to the enhancement factor—the principal of St. Thomas of Canterbury School and an investigator for the Cook County State's Attorney's office.

The principal, Christine Boyd, testified that St. Thomas of Canterbury School is located at 4827 N. Kenmore and the John T. McCutcheon Branch School is located across the street from St. Thomas School.

Principal Boyd said her school accepts students from age three for preschool through eighth grade. About 272 children attend the school. The school was in session on May 9, 1996. Using photographs showing the intersection of Ainslie and Kenmore and the area near the school, Principal Boyd was able to describe the proximity of the intersection to her school.

On cross-examination, she said she could not identify Larry Carter as someone who sold drugs near the school. On redirect examination, over objection, she told about the type of activity she would see on the street during morning hours:

"Activity is the selling of drugs, using children under the ages of 12 on bicycles up and down our street with older people as the main sellers that station themselves at the corner of Ainslie and Kenmore."

Neither Principal Boyd nor any other witness testified children were present in the area when the defendant was arrested, at about 8:30 p.m.

Investigator Sullivan testified he measured the distance from 4859 N. Kenmore (a location near the intersection of Ainslie and Kenmore) to three area schools, including St. Thomas and McCutcheon. He found all three schools were within 1,000 feet of 4859 N. Kenmore. A diagram he had prepared, which showed the schools in relation to 4859 N. Kenmore, was admitted in evidence.

Sullivan testified he had taken the photographs which Principal Boyd used in her testimony. Sullivan identified the photos and said they were a true and accurate depiction of the area near the intersection of Ainslie and Kenmore.

The defendant offered no evidence.

The jury found Carter guilty of both counts in the information and of the lesser-included offense of possession of a controlled substance. The State had offered instructions and verdict forms on the lesser-included offense during the instructions conference. The convictions were merged and Carter was sentenced to a single term of five years' imprisonment.

## DECISION

### 1. The "Within 1,000 Feet of a School" Count

■ Before, during, and after trial the defense contended the school distance count (count I) was defective for failure to allege the possession of cocaine took place "on any public way." 725 ILCS 570/407(b)(2) (West 1996).

The State acknowledged it had to prove the "public way" element, but denied it had to allege it. The trial judge agreed with the State. Defendant's motion to dismiss the indictment was denied.

After this trial, we decided *People v. Jones*, 288 Ill. App. 3d 293, 681 N.E.2d 537 (1997). There, we held the "on any public way" element was essential to the offense and failure to allege it was fatal to the charge.

Now, the State, because of *Jones*, agrees count I is void. We so hold.

2. Comments and Evidence Concerning Schoolchildren

There can be no question that Larry Carter was within 1,000 feet of a school when his activities were observed by police officers. That fact never was contested by the defense.

Larry Carter was seen by the officers at about 8:30 p.m. No one said a child was anywhere near Carter or a school at that time.

Yet, from opening statement to rebuttal closing argument, the prosecution made this a case about schools and schoolchildren.

In its opening statement, the prosecution said:

> "This is a very simple case, it is about a drug dealer and elementary school children. It is about an individual who makes his trade on a street line[d] with elementary school children ***."

The State's first witness was Christine Boyd, principal of the St. Thomas school. On direct examination, she said 272 children attend her school. The children ranged from preschoolers three years of age to eighth graders. Slightly to the north is the McCutcheon school, which, she said, serves children in kindergarten through second grade.

During direct examination, Ms. Boyd identified several State photographs. People's exhibit 1 is an 8-by-10 color photo of the St. Thomas school. It shows about 15 children standing on the steps of the school. Other than showing the school exists, an undisputed fact, the photo has no apparent probative value.

Defense counsel did not object to admission of the photo. He did object to Ms. Boyd's testimony on redirect examination. She told of seeing drug dealers using children under 12 on bicycles for the selling of drugs. She told of patrolling nearby streets in the early afternoon and prohibiting nighttime activities at the school to ensure the safety of the schoolchildren.

In rebuttal closing argument the prosecution, over objection, elaborated:

> "Children don't get to go to their school, they don't get to play at their school at night, they don't get to have PTA meetings, they don't get to live like civilized citizens because of the defendant because people like the defendant have invaded their neighborhood."

Again, over objection, using Ms. Boyd's testimony, the prosecution drew a picture of Carter that extended far beyond the charges against him:

> "Because individuals such as Larry Carter are out there selling drugs. He, as you heard from Christine Boyd, and his counterpart are out there all day running up and down in bicycles, standing out in traffic as bold and as big as life, they have no respect for the law, they have no respect for the kids who are trying to get an education at this school, they have no respect for this Court."

■ A prosecutor may dwell on the evil of crime and exhort the jury to fearlessly administer the law. *People v. Hairston*, 46 Ill. 2d 348, 375, 263 N.E.2d 840 (1970). But where statements made in closing argument serve no purpose except to inflame the jury, the statements constitute error. *People v. Tiller*, 94 Ill. 2d 303, 321, 447 N.E.2d 174 (1982) (error for State's Attorney to characterize three murders as a holocaust, similar to the Nazi Holocaust depicted in a television show broadcast the night before).

■ Here, it appears to us the prosecutor's purpose was to inflame the passion or arouse the prejudice of the jury against the defendant "without shedding any light on the paramount question presented to the jury, to-wit, its decision." *People v. Lurry*, 77 Ill. App. 3d 108, 114, 395 N.E.2d 1234 (1979) (error to make argument based on racial overtones and racial problems); *People v. Blackman*, 44 Ill. App. 3d 137, 140, 358 N.E.2d 50 (1976) (improper appeal to juror fears for prosecutor to argue that jurors, if they acquit, should avoid the area of 81st and Western and should not let Ruth beat them back to their parked cars). Also see *People v. Threadgill*, 166 Ill. App. 3d 643, 520 N.E.2d 86 (1988) (error to repeatedly say the jurors' decision would indicate whether they supported the police who were out protecting them).

There was no evidence in this case that this defendant possessed or sold drugs anywhere in the vicinity of children. Nor was there any evidence that he was part of a band of drug dealers plying their trade in the neighborhood. The prosecutor's remarks served no purpose other than inflaming the jury. *People v. Rogers*, 187 Ill. App. 3d 126, 138, 543 N.E.2d 300 (1989) (error for prosecutor to say, without evidentiary support: "I guess we are all supposed to hope and believe that drug dealers who sell drugs to grade school and high school kids are just pretending").

In *People v. Watkins*, 220 Ill. App. 3d 201, 210, 581 N.E.2d 145 (1991), where the defendant was charged with possession of a controlled substance, we said we do not condone a prosecutor arguing: "Ladies and Gentlemen, how can we ever face our children, how can we ever tell them to say no to drugs, if we let somebody like Lonnie Watkins back out on the street?"

The argument in this case resembles the one made in *People v. Ford*, 113 Ill. App. 3d 659, 447 N.E.2d 564 (1983), where the defendant was charged with unlawful delivery of cannabis. The prosecutor argued:

> "[B]ecause if we're talking about sympathies and prejudice when we're talking about the elicit [*sic*] business of selling drugs, then I would suggest that the Defense look to the poor, innocent,

susceptible children in our community who are tempted and forced by peer pressures ***." *Ford*, 113 Ill. App. 3d at 662.

The Court said:

"It is clear that the prosecutor was making an inflammatory appeal to the fears of the jury, and such remarks cannot be condoned." *Ford*, 113 Ill. App. 3d at 662.

We do not consider the prosecution's final argument remarks in isolation. They were part of a theme heard and seen throughout the trial, not the single comment we permitted in *People v. Peterson*, 248 Ill. App. 3d 28, 618 N.E.2d 388 (1993).

The State proved distance from the school through its investigator and the diagram he prepared. Distance was an enhancing factor and had little or nothing to do with the defendant's behavior on May 9, 1996, at Ainslie and Kenmore. See *Old Chief v. United States*, 519 U.S. 172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997). While the extensive comments and evidence concerning schools and children would represent prosecutorial excess in the trial of count I, they have no arguable relevance to count II or the lesser-included possession charge.

The trial judge made no effort to confine schools and schoolchildren evidence to count I. True, he was not asked to do so, but there are times when a trial judge's uninvited action can cure unfair prejudice. For example, in *People v. Marshall*, 165 Ill. App. 3d 968, 978, 521 N.E.2d 538 (1988), the trial judge *sua sponte* struck a prosecutor's comment that the defendant intended to deliver the cocaine to the neighborhood, addicts, children, and other members of the community. Potential error was avoided.

We do not deprecate the potential dangers of drug traffic in the vicinity of children. Principal Boyd's concern for her students is real and justified. Because the matter is emotionally charged, however, care must be taken to abide by principles of relevance, lest improper considerations direct the conduct of the jury.

### 3. Police Familiarity With Larry Carter

■ Another theme sounded by the State was police familiarity with Larry Carter before the day he was arrested.

In opening, the prosecutor said:

"Officer Glen is going to tell you that he knows the defendant, he knows him by name, that is, Larry Carter."

The promise was kept. On direct examination of Officer Glen:

"Q. *** did you recognize the defendant?
A. Yes, I recognized him as Larry Carter.
Q. Had you seen the defendant previous to that day?
A. Yes.

> Q. As you approached, did you say anything to any of the other officers in the vehicle?
>
> A. Yes. I let them know that was Larry Carter."

Glen had testified that his duties included "narcotics surveillance, gang surveillance."

The point was made again when Officer Bocconcelli testified:

> "A. My partners, they approached also. As we approached, Officer Glenn [sic] says that is Larry Carter.
>
> Q. What did you do if anything?
>
> A. As I approached, I said, Larry I just saw you do two deals."

The obvious inference is that Carter had been engaged in prior illicit drug or gang activity, an implication that has been criticized by our supreme court. *People v. Stover*, 89 Ill. 2d 189, 196, 432 N.E.2d 262 (1982). Even where a prosecutor does not argue prior familiarity with a defendant is evidence of criminal conduct, the implication may be conveyed by testimony and "is better avoided, unless somehow relevant." *People v. Bryant*, 113 Ill. 2d 497, 514, 499 N.E.2d 413 (1986).

We have examined the record to determine whether there was any relevant purpose for repeated references to a narcotics and gang surveillance officer knowing Larry Carter by name. We find none.

Contrary to the State's contention, there never was an issue concerning whether Larry Carter was the man observed by Officer Bocconcelli. Defense counsel's cross-examination of the officers and his final argument were directed at the police account of what Carter was doing, not at his presence. In final argument defense counsel's only point was that there was not enough evidence Larry Carter passed or possessed cocaine.

The police familiarity evidence should not have been admitted.

### 4. The Impact of the Improper Comments and Evidence

The State contends Carter failed to preserve for review the issues he now raises. It is true that defense objections were hit and miss during the trial, although, as we have pointed out, defense counsel did periodically object to Principal Boyd's testimony, testimony and comments about Officer Glen's familiarity with Carter, and final argument concerning schoolchildren. It also is true that defense counsel made no effort to preserve any of these errors in his posttrial motion, a blatant disregard of his client's interests.

■ Ordinarily, failure to present an issue in a posttrial motion results in a procedural default. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). We are persuaded, however, that a plain error analysis is appropriate in this case. We believe the errors we have

discussed, as they apply to count II and the lesser-included possession offense, are worrisome enough to invoke the plain error exception to the waiver rule. 134 Ill. 2d R. 615(a); *People v. Brandon*, 162 Ill. 2d 450, 457-58, 643 N.E.2d 712 (1994). Substantial rights are affected. *People v. Threadgill*, 166 Ill. App. 3d at 650; *People v. Lurry*, 77 Ill. App. 3d at 114.

In addition, our supreme court has observed that "the waiver rule is a rule of administrative convenience rather than jurisdiction, and the goals of obtaining a just result and maintaining a sound body of precedent may sometimes override considerations of waiver." *People v. Hicks*, 181 Ill. 2d 541, 545, 693 N.E.2d 373 (1998).

Our decision to address the merits of the defendant's contentions requires us to examine the admissible evidence heard and seen by the jury, then determine whether the errors we have identified could have made any difference.

There is no litmus test that allows us to scientifically measure the impact of impropriety on a jury. At times, when we engage in a weighing process, we conclude the errors did not prejudice the defendant. Reversal, then, is not required. See *People v. Davis*, 285 Ill. App. 3d 1039, 1044, 675 N.E.2d 194 (1996).

In other cases, confidence in the outcome is shaken. Strong evidence or not, "a fair trial, in all its stages, is a fundamental requirement in a criminal prosecution." *People v. Rega*, 271 Ill. App. 3d 17, 24, 648 N.E.2d 130 (1995). Our responsibility to provide a just result has caused us to examine an issue not raised by the defendant on appeal. *People v. Thomas*, 277 Ill. App. 3d 214, 218, 660 N.E.2d 184 (1995).

Here, all error aside, no rational jury could have found the defendant not guilty of the lesser-included possession charge. Evidence of possession was uncontradicted and unchallenged. The possession conviction is affirmed.

■ Whether the defendant possessed the cocaine with intent to distribute it is a closer question. While one officer testified to seeing two exchanges, at night, from a distance of 100 to 130 feet, through binoculars, neither of the two purported buyers was stopped. Carter possessed less than a gram of cocaine.

We conclude the entirety of improper comments and evidence well might have tainted the jury's deliberations on the intent to distribute charge. That conviction cannot stand.

CONCLUSION

We reverse the defendant's conviction under count I, which defectively charged him with possession of a controlled substance

within 1,000 feet of a school. We reverse the defendant's conviction for possession of a controlled substance with intent to distribute. We affirm the defendant's conviction for possession of a controlled substance and remand that cause to the trial court for resentencing.

Because the simple possession conviction that stands is a lesser-included offense, there is no reason to remand the greater offense of possession of a controlled substance with intent to distribute.

Reversed in part, affirmed and remanded in part.

McNAMARA and SOUTH, JJ., concur.