No. 3--01--0629

_________________________________________________________________

    IN THE

                   APPELLATE COURT OF ILLINOIS

                         THIRD DISTRICT

                           A.D., 2003

THE PEOPLE OF THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS,                    )  of the 10th Judicial Circuit,

       )  Peoria County, Illinois,

Plaintiff-Appellee,       )

                                )

v.                         )  No. 01--CF--17

  )

DWAINE JOHNS,                   )  Honorable

  )  Donald C. Courson,

Defendant-Appellant.       )  Judge Presiding.

________________________________________________________________

JUSTICE SCHMIDT delivered the opinion of the court:

________________________________________________________________

Defendant Dwaine Johns was charged with the felony murders (720 ILCS 5/9--1(a)(3) (West 2000)) of Michael Douglas and Bertha Diaz.  Following a jury trial, defendant was found guilty of both felony murders.  He was subsequently sentenced to natural life imprisonment pursuant to the Unified Code of Corrections (730 ILCS 5/5--8--1(c)(ii) (West 2000)).  Defendant's posttrial motion was denied and he appeals, arguing that (1) he was not proved guilty of Douglas's murder on a theory of accountability because the State's evidence failed to prove that he intended to promote or facilitate the armed robbery or attempted armed robbery of Douglas; (2) his conviction for the felony murder of Diaz must be reversed, because the armed robbery or attempted armed robbery of Douglas ended before Diaz was murdered; and (3) the imposition of a sentence of natural life imprisonment was unconstitutional as applied.  

BACKGROUND

At trial, it was undisputed that on March 1, 2000, Jarvis Jackson shot and killed Michael Douglas near Douglas's mother's home in Peoria Heights and then shot and killed Bertha Diaz in an apartment at 711 Shipman in Peoria.  The issue at trial was whether Dwaine Johns was accountable for the homicides.  The events leading up to these murders were recounted by both the defendant, who testified in his own behalf, and Jarvis Jackson, who testified against the defendant as part of a plea bargain in which the State agreed not to seek the death penalty against Jackson.

Defendant testified that on the evening in question, he agreed to accompany Jackson and Derrick Echols to "collect some money" from Michael Douglas.  The three men rode to 711 North Shipman in Peoria in Jackson's vehicle.  Jackson knocked on the apartment door, kicked it in and entered the apartment.  Defendant testified that he never saw a gun until Jackson kicked in the door.  At that point, Jackson waved the gun and told defendant and Echols to enter the apartment.  Diaz and Douglas were sitting on the couch when the three entered the apartment.  Jackson approached Douglas and demanded to know where "the shit" was.  Defendant heard Douglas and Jackson argue and Douglas mentioned that "it" was at his mom's.  Jackson then took Douglas upstairs and returned with Douglas and a second gun.  He handed the second gun to the defendant and told defendant to stay with Diaz.  

Defendant remained in the apartment with Diaz for approximately 45 minutes before Jackson returned.  During that time, there was a small baby in a playpen on the first floor and another small boy upstairs who came down and sat with Diaz.  Diaz allegedly told defendant that Douglas did not keep that kind of "stuff" in the house because they had been robbed before.  Defendant states that he told Diaz that he was not there to get anything and did not even know what was going on.  Defendant testified that he did not leave the apartment because he was afraid that Jackson was outside the door.  Defendant claims that he kept the gun in his pocket the entire time that he sat with Diaz during Jackson's absence.  According to defendant, when Jackson returned, he told defendant to leave.  Defendant gave Jackson the second gun and left the apartment.  Ten to fifteen seconds later, defendant heard a gunshot.  

Jackson left the apartment, shoved defendant into his car, and sped away.  While they were driving away from the scene, Jackson mentioned that he had shot Douglas because Douglas had tried to run.  Jackson gave the gun to defendant and told him to hide it.  Defendant said he buried it in his backyard, but the next day, he dug it up and returned it to Jackson.  Defendant did not go to the police until he learned that they were looking for him.  He claimed that he initially remained quiet and did not inform police of what happened because he feared Jackson and his brother, who had threatened him if he talked.  Jackson threatened to tell the police that defendant was the shooter if he talked.  

Defendant told a police detective in September of 2000 that he knew who killed Douglas and Diaz.  However, he did not give any further details until he gave a voluntary statement on January 6, 2001.  Defendant subsequently assisted the police by arranging to meet Jackson at a Wal-Mart store, where Jackson was taken into custody.  

In rebuttal, Jackson testified that he, defendant and Echols had planned to go to Douglas's residence to rob him and that defendant saw Jackson's gun when Jackson came to pick him up.  Jackson also said that defendant was standing next to him when he shot Diaz.  Jackson admitted that he initially told the police that defendant was the shooter, but in a later statement, he admitted that he shot both Douglas and Diaz.  He subsequently pled guilty to both murders and agreed to testify against defendant in exchange for a sentence of natural life imprisonment.  

ISSUES AND ANALYSIS

I. Accountability for Felony Murder

a. General Principles Involved

First, we consider defendant's contention that he was not proved guilty on the theory of accountability because the State failed to prove that he intended to promote or facilitate the robbery or attempted robbery of Douglas.  The State argues that the defendant knew about the plan to rob Douglas, and the murders would not have occurred but for defendant's conduct.

Upon the conviction of a defendant, a reviewing court will preserve the role of the trier of fact as weigher of the evidence by viewing the evidence in the light most favorable to the prosecution.  
People v. Collins
, 106 Ill. 2d 237, 478 N.E.2d 267 (1985).  Issues of witness credibility are reserved for the trier of fact as well.  The relevant question is whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.  
People v. Campbell
, 146 Ill. 2d 363, 586 N.E.2d 1261 (1992).  

A person commits attempted robbery when, with intent to commit robbery, he takes any substantial step toward the commission of a robbery.  720 ILCS 5/8--4, 18--1(a) (West 2000).  He commits a robbery when he takes property from the person or the presence of another by the use of force or by threatening the imminent use of force.  720 ILCS 5/18--1(a) (West 2000).  

To prove an offense by accountability, the State must prove that, either before or during the commission of an offense, the defendant solicited, aided, abetted, agreed or attempted to aid another in the planning or commission of the offense.  720 ILCS 5/5--2(c) (West 2000).  While mere presence at the scene of an offense is not culpable, proof that the defendant was present during the commission of a crime without opposing or disapproving it, that he maintained a close affiliation with the principal afterwards, and that he failed to report the crime are all factors that may be considered in determining legal accountability.  
People v. Grice
, 87 Ill. App. 3d 718, 410 N.E.2d 209 (1980).

The "common design rule" provides that, where two or more persons engage in a common criminal design or agreement, any further acts committed by one party are considered to be the acts of all parties to the common design and all are equally accountable for the consequences of such further acts.  
People v. Jackson
, 333 Ill. App. 3d 962, 777 N.E.2d 626 (2002).  A common design may be inferred from the circumstances surrounding the commission of a crime.  
People v. Lee
, 247 Ill. App. 3d 505, 617 N.E.2d 431 (1993).  

Felony murder derives its mental state from the underlying intended offense.  Felony murder seeks to deter persons from committing forceable felonies by holding them responsible for murder if a death results.  
People v. Viser
, 62 Ill. 2d 568, 343 N.E.2d 903 (1975).  A defendant may be found guilty of felony murder regardless of a lack of intent to commit murder.  
People v. Moore
, 95 Ill. 2d 404, 447 N.E.2d 1327 (1983).  Illinois adheres to a proximate cause approach to felony-murder liability.  
People v. Lowery
, 178 Ill. 2d 462, 687 N.E.2d 973 (1997).  

Applying these principles, we discuss below defendant's convictions for the felony murders of Michael Douglas and Bertha Diaz.

b. Accountability for Felony Murder of Douglas

The State's evidence established that defendant willingly accompanied Jackson and Echols to Douglas's home with the intent to rob him.  Defendant continued to participate in the criminal enterprise by agreeing to remain at Douglas's apartment, holding Bertha Diaz at gunpoint while Jackson and Echols escorted Douglas to his mother's house to obtain Douglas's property.  There is no question that defendant was a participant in the attempted armed robbery of Douglas.  The only logical presumption is that defendant held Diaz at Douglas's apartment to keep her from notifying police while Jackson and Echols drove Douglas to his mother's house.  After the robbery or attempted robbery of Douglas, defendant resumed his association with Jackson and did not report the incident to the police when he learned that Douglas had been killed during the attempted robbery.  Furthermore, defendant took possession of the murder weapon immediately after the murder, hid it at his house for approximately one day, thought better of that and then, rather than turn the gun over to police, returned it to the shooter.  The evidence was thus more than sufficient to prove that defendant was accountable for the felony murder of Douglas.  See, 
i.e
., 
Jackson
, 333 Ill. App. 3d 962, 777 N.E.2d 626.

c. Accountability for Felony Murder of Bertha Diaz

Next, defendant contends that he cannot be held accountable for the murder of Diaz because the attempted robbery or robbery of Douglas ended before Diaz was shot.  The State responds that the defendant waived the argument.  In his posttrial motion, the defendant argued that the State's evidence was insufficient to support his convictions.  While the argument he presents in this appeal is more focused than the issue presented in the trial court, it nonetheless challenges the sufficiency of the State's evidence to convict; therefore, we review the issue on its merits.  
People v. Thomas
, 277 Ill. App. 3d 214, 660 N.E.2d 184 (1995).  

Defendant relies on 
People v. Dennis
, 181 Ill. 2d 87, 692 N.E.2d 325 (1998), and 
People v. Shaw
, 186 Ill. 2d 301, 713 N.E.2d 1161 (1998), to support his argument that he cannot be guilty of the felony murder of Bertha Diaz.  He argues that since the underlying felony was the intended robbery of Michael Douglas, that robbery ended upon the murder of Douglas and, therefore, he cannot be liable under the felony-murder rule for the murder of Bertha Diaz.  We disagree.  Defendant's reliance on 
Dennis
 and 
Shaw
 is misplaced.

Dennis
 is an accountability case in which the supreme court ruled that the defendant could not be accountable for an armed robbery even though he helped the perpetrator escape from the armed robbery.  This was so because the armed robbery was complete before defendant's involvement.  It was complete because not only had the property been taken, but the threat of force had ceased before the escape.  
People v. Dennis
, 181 Ill. 2d 87, 692 N.E.2d 325 (1998).

Shaw
 is a felony-murder case where the supreme court held that a defendant could not be held guilty of the felony murder of a police officer killed during an escape from an armed robbery.  The supreme court found that there was not sufficient evidence to show that the defendant had anything to do with the armed robbery other than to be in the general vicinity and to transport the perpetrator away from the vicinity.  
People v. Shaw
, 186 Ill. 2d 301, 713 N.E.2d 1161 (1998).  That is, in both 
Shaw
 and 
Dennis
, the court found that the defendants had nothing to do with the underlying felony of armed robbery.

Here, defendant was a participant in the armed robbery.  He went to the victim's home and held Bertha Diaz at gunpoint so that Jackson could take Douglas to look for the money elsewhere.  Defendant held Bertha Diaz at gunpoint for approximately 45 minutes until Jackson returned.  Defendant's use of force in this case was no less significant in effectuating the armed robbery than was that of Jackson.  Likewise, the use of force against Bertha Diaz was no less significant with respect to the armed robbery of Michael Douglas than was the use of force against Douglas himself.  Obviously, this fact was not lost on the armed robbers, otherwise, all three of them would have accompanied Michael Douglas to his mother's house to leave Bertha Diaz to do as she pleased, which probably would have included notifying the police that an armed robbery was in progress.  

Defendant then argues that with the death of Michael Douglas, the attempted robbery of Douglas was complete and therefore the subsequent murder of Bertha Diaz, approximately four miles away, could not be a result of the armed robbery of Douglas.  Not so.  For the felony-murder rule to attach, the act causing the death must both occur during the underlying felony and be the direct and proximate result of the felony.  
People v. McCarroll
, 168 Ill. App. 3d 1020, 523 N.E.2d 150 (1998); 
People v. Dekens
, 182 Ill. 2d 247, 695 N.E.2d 474 (1998).  However, for the purposes of the felony-murder rule, the armed robbery is not complete until the conspirators have won their way to a place of temporary safety.  

It is important to note that this armed robbery began at the apartment of Bertha Diaz at 711 Shipman in Peoria.  Defendant remained at this scene, holding Bertha Diaz at gunpoint, until Jackson returned and executed her.  The fact that Bertha Diaz was not the intended victim of the armed robbery is irrelevant.  
People v. Bongiorno
, 358 Ill. 171, 192 N.E.2d 856 (1934).  Defendant argues that upon the murder of Douglas, the armed robbery was complete since Douglas could no longer be forced to part with property and since the use of force against Douglas had ceased.  This argument ignores the fact that the force being exerted against Bertha Diaz had not ceased.  Likewise, one of the co-conspirators, the defendant, remained at the original scene of the armed robbery with Bertha Diaz. 

People v. Johnson
, 55 Ill. 2d 62, 302 N.E.2d 20 (1973), is very instructive.  In 
Johnson
, at least two robbers entered a tavern and committed an armed robbery at gunpoint.  Both had fled the tavern.  Approximately two seconds later, one of the robbers reentered the tavern and fatally wounded a patron.  It was argued by the defendant that he could not be guilty of the felony murder of the patron because the armed robbery had been completed once the robbers had fled the tavern.  Our supreme court, in affirming the felony-murder conviction, stated, "Why [the shooter] returned two seconds after leaving the tavern to kill the woman cannot be certainly determined, but the jury could have concluded that it was because he sensed she had recognized him.  By killing her he would improve the defendant's and his chances for escape, would avoid detection for the crimes, and would eliminate the possibility of [the victim] testifying against him."  
People v. Johnson
, 55 Ill. 2d at 69.  This is analogous to the situation at bar.  However, this is even a stronger case because, unlike in 
Johnson
, here the threat of force against Bertha Diaz that began the armed robbery did not cease, nor was it even interrupted momentarily, until her execution.  As in 
Johnson
, here the jury certainly could have concluded that by killing Bertha Diaz, Jackson improved the defendant's and his chances for escape, would avoid detection for the crimes and would eliminate the possibility of Bertha Diaz testifying against him.

The force used to effectuate the attempted armed robbery of Michael Douglas involved the force used against Bertha Diaz and Michael Douglas.  The force used against Bertha Diaz began when Jackson, Echols, and defendant burst into Diaz's apartment and ended when Diaz was executed.  There was more than sufficient evidence to convict defendant of the felony murder of Bertha Diaz.  The conviction is affirmed.

II. Defendant's Natural Life Sentence

Defendant's attack on the imposition of his natural life sentence is threefold.  Defendant claims that such a sentence violates both the due process clause (Ill. Const. 1970, art. I, §2) and the proportionate penalties clause (Ill. Const. 1970, art. I, §11) of the Illinois Constitution.  Furthermore, defendant claims his sentence violates the eighth amendment to the United States Constitution (U.S. Const., amend. VIII).  Defendant's sentence was imposed pursuant to section 5--8--1(a)(1)(c) of the Unified Code of Corrections (730 ILCS 5/5--8--1(a)(1)(c) (West 2000)).

Courts have repeatedly rejected challenges to section 5--8--1(a)(1)(c) on both state and federal constitutional grounds.  

People v. Taylor
, 102 Ill. 2d 201, 464 N.E.2d 1059 (1984); 
People v. Perry
, 230 Ill. App. 3d 720, 595 N.E.2d 736 (1992); 
People v. Foster
, 198 Ill. App. 3d 986, 556 N.E.2d 1214 (1990);  
People v. Bailey
, 164 Ill. App. 3d 555, 517 N.E.2d 570 (1987); 
People v. Cannon
, 150 Ill. App. 3d 1009, 502 N.E.2d 345 (1986); 
People v. Rodriguez
, 134 Ill. App. 3d 582, 480 N.E.2d 1147 (1985); 
People v. Boswell
, 132 Ill. App. 3d 52, 476 N.E.2d 1154 (1985).  The 
Perry 
court found that a "mandatory natural life sentence for multiple murders specified by section 5--8--1(a)(1)(c) of the Unified Code of Corrections [citation] is not limited only to those found guilty as principal offenders.  It is also validly applied where guilt is based on accountability [citation], and it has been upheld against State and Federal constitutional challenges even where the defendant's convictions were based on accountability."  
Perry
, 230 Ill. App. 3d at 722.  The 
Perry 
court then held that the imposition of a natural life sentence for multiple murders, even though based on accountability, did not violate the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) or the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11).  We agree.   

Defendant argues that a sentence of natural life under section 5--8--1(a)(1)(c) as applied to him "violates due process because such a sentence is not reasonably designed to remedy the particular evil that the mandatory natural life sentence statute sought to punish."  

Defendant posits that the legislature only intended for a natural life sentence to be imposed under section 5--8--1(a)(1)(c) on "the most dangerous and incorrigible multiple murderers who were eligible for, but did not receive, the death penalty."  However, there is no language in the statute to even suggest that a natural life sentence is only applicable to those who are death penalty eligible.  We will not graft such language into section 5--8--1(a)(1)(c).

We find the statute does serve to remedy the evil that the legislature intended and the imposition of the natural life sentence as applied to the defendant does not violate his due process rights.  

CONCLUSION

The circuit court of Peoria County is affirmed.

Affirmed.

LYTTON, J., concurs.

PRESIDING JUSTICE McDADE concurring in part and dissenting in part:                         

________________________________________________________________

I concur in the affirmance of defendant's conviction of the felony murder of Michael Douglas based on accountability for the attempted robbery of Douglas.  However, I write separately because I do not believe the majority's analysis of the issue with regard to the murder of Bertha Diaz is legally or factually justifiable. 

First, I believe it noteworthy that the majority justifies its affirmance of defendant's conviction for the felony murder of Diaz by relying heavily on the factual assumption that defendant "held Bertha Diaz at gunpoint for approximately 45 minutes until Jackson returned."  The record contains no evidence that defendant's role in the attempted robbery of Douglas was to hold Diaz hostage until Jackson and Echols returned to the apartment.  Rather, the evidence admitted at trial showed only that Jackson handed defendant a small gun after Jackson and Douglas went upstairs so that Douglas could get dressed.  Defendant said he believed the gun belonged to Douglas.  He said he put the gun in his pocket and did not remove it until Jackson ordered him to leave the apartment.  Defendant's undisputed testimony also established that on the night of the offenses he was recovering from a gunshot wound to the left thigh, and he was unable to run. The evidence thus gave rise to reasonable inferences other than the "hostage-holding" theory pressed by the majority--
i.e.
, defendant could have been left behind with Diaz because he was disabled, and defendant may have held Douglas' gun so that Diaz could not retrieve it and use it against defendant.

Weaknesses in the State's evidence of culpability for Diaz' murder was not lost on the prosecution and readily explains the State's shift in its theory on appeal.  At trial, the prosecutor never attempted to show or argue to the jury that defendant or either of his codefendants intended to rob Diaz.  Although the indictment did not name the intended victim of the robbery, the State's evidence established that Douglas was the only person defendant and his cohorts intended to rob.  Contrary to its position at trial, the State now argues that defendant is liable for Diaz' murder based on accountability for a robbery or attempted robbery of Diaz.

Because the State's primary argument in this appeal represents a new theory, it must be rejected.  
People v. Crespo
, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001).  Further, in my opinion, the theory of culpability embraced by the majority based on the "felony murder escape rule" is equally untenable under the facts proved at trial.

To sustain defendant's conviction of the felony murder of Diaz, the majority opinion declares that "armed robbery is not complete until the conspirators have won their way to a place of temporary safety."  While this may be true in jurisdictions where asportation is an element of robbery (see, 
e.g.
, 
People v. Cooper
, 53 Cal. 3d 1158, 811 P.2d 742, 282 Cal. Rptr. 450 (1991)), it is not the law of this state.  
People v. Dennis
, 181 Ill. 2d 87, 692 N.E.2d 325 (1998).  By declaring otherwise, the majority impermissibly stretches this state's felony murder escape rule to include conduct beyond the elements of the underlying felony.

To convict a defendant of felony murder, the State must prove that, in performing the acts that caused the decedent's death, the defendant, or one for whom he is accountable,
 
was attempting or committing a forcible felony other than second degree murder.  720 ILCS 5/9--1(a)(3) (West 2000).  The act causing the death must both occur during the underlying felony and be the direct and proximate result of the felony.  
People v. McCarroll
, 168 Ill. App. 3d 1020, 523 N.E.2d 150 (1988); 
People v. Dekens
, 182 Ill. 2d 247, 695 N.E.2d 474 (1998).  The duration of the underlying felony has been judicially extended by the felony murder escape rule.  Under this rule, if the act causing death did not occur contemporaneously with the commission of the predicate felony, it nevertheless will support a charge of felony murder if it occurred during flight or escape from the immediate scene of the underlying offense.  See 
People v. Jackson
, 333 Ill. App. 3d 962, 777 N.E.2d 626 (2002); 
People v. Burnom
, 338 Ill. App. 3d 495, 790 N.E.2d 14 (2003)
; 
People v. Johnson
, 55 Ill. 2d 62, 302 N.E.2d 20 (1973); 
People v. Bongiorno
, 358 Ill. 171, 192 N.E. 856 (1934).  Even so, escape is not an element of robbery and, where an escape is accomplished without force, a subsequent murder cannot be said to have occurred during the commission of the robbery.  
Dennis
, 181 Ill. 2d 87, 692 N.E.2d 325.  To illustrate the causal connection that must exist to impose felony murder liability, Professor LaFave provides the following example:  "A robber who, in flight from the scene, shoots a policeman who threatens to capture him may easily be found to have caused a death in the commission of the robbery; but if, during his flight, he should happen to spot his enemy and shoot him, this death, though equal to the policeman's death in point of time and place, would lack the causal connection which existed in the policeman's case."  W. LaFave, Substantive Criminal Law § 14.5(f)(2), at 465-66 (2d ed. 2003). 

The question presented here is whether the attempted robbery of Douglas continued throughout the period of time it took for Jackson and Echols to drive over four miles from the scene of Douglas' death on his mother's front lawn in Peoria Heights to Diaz' apartment in Peoria.  Clearly, all of the elements of the predicate offense were completed before Jackson arrived at the apartment.  Nevertheless, we must determine whether, accepting defendant's liability as an accomplice in the attempted robbery and felony murder of Douglas, the State proved that the murder of Diaz occurred during flight or escape from the scene of the attempted robbery of Douglas.  See 
Dennis
, 181 Ill. 2d 87, 692 N.E.2d 325.

The majority cites no Illinois decisions where the felony murder escape rule has been applied to impose accomplice liability for a homicide when the predicate offense was committed  as remotely in time and distance as here.  
Johnson
, a classic example of the outer limits of accomplice liability for felony murder committed during an "escape" from the predicate offense, is inapposite.

In 
Johnson
, Johnson was a principal in armed robberies of a tavern owner and its patrons, and he was an accomplice to codefendant Clay's felony murder of the tavern owner's wife, who was an eyewitness to the robberies.  Johnson's culpability for the latter offense was established upon facts that (1) Johnson entered the tavern with a weapon, thereby proving that he participated in a common design to use deadly force if needed to commit the predicate offense; (2) a reasonable inference could be drawn that Johnson anticipated use of deadly force to avoid apprehension and to effect an escape, and (3) the murder occurred "on the premises where the robberies took place."  
Johnson
, 55 Ill. 2d at 69, 302 N.E.2d at 24.  Because the murder was committed by codefendant Clay within seconds of the predicate offense and in the same vicinity, the causal connection between the robberies and the murder was unbroken and justified imposing accomplice liability on Johnson for the felony murder of the tavern owner's wife.  
Johnson
, 55 Ill. 2d 62, 302 N.E.2d 20.

By contrast, the evidence of a causal connection between the attempted robbery of Douglas and the shooting of Diaz was too speculative to support defendant's accomplice liability for her death on a felony murder theory.  Unlike 
Johnson
, the predicate felony began at the Shipman apartment, but ended with Douglas' murder outside his mother's house, more than four miles away.  There was no indication that Jackson used force to make his escape from the immediate scene of the attempted robbery.  
Cf.
 
Johnson
, 55 Ill. 2d 62, 302 N.E.2d 20.  Nor was there any evidence that Jackson was pursued by anyone en route to Bertha's apartment.  
Cf.
 
Bongiorno
, 358 Ill. 171, 192 N.E. 856.  The evidence established that Jackson's escape from the attempted robbery was effectively completed when he entered his vehicle and fled the scene.  Thus, for purposes of felony murder liability, Jackson's unmolested drive following the murder of Douglas broke the causal connection between the attempted robbery of Douglas and the murder of Diaz.

Diaz' murder unquestionably was a cold-blooded, intentional execution of a witness.  However, contrary to the majority, I do not find that the State produced sufficient evidence to prove that Jackson's shooting of Diaz occurred during the commission of, or escape from the attempted robbery of Douglas.  The causal connection between Diaz' murder and the attempted robbery of Douglas, no less than the murder of the robber's enemy and the robbery in Professor LaFave's illustration, was too tenuous to prove felony murder.  Accordingly, I would reverse defendant's conviction for the felony murder of Diaz.

Finally, I note that the trial court imposed a sentence of life imprisonment under the statute mandating such sentence for multiple murders (730 ILCS 5/5--8--1(c)(ii) (West 2000)).  Based on my foregoing analysis, I would vacate defendant's sentence and remand the cause for resentencing for the murder of Douglas, thereby obviating any discussion of defendant's constitutional challenges to his life sentence.